# Ralston's Appeal.

1. There is no authority for a sheriff in this state to depute a sheriff in another state to execute a writ in the bailiwick of the latter, so as to give it the effect of a personal service. A service thus made cannot give the court in this state jurisdiction of the person of a respondent, so as to decree a divorce.

2. The language "wherever found," in the Act of March 13th 1815, cannot be so construed as to give to a court of this state extra-territorial power to bring within its jurisdiction the person of a citizen and resident of another state.

3. A husband cannot obtain a divorce from his wife on the ground of desertion, although she has separated herself from him for over two years, where it appears, that during that period, he remitted an allowance to her.

February 4th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Court of Common Pleas, No. 1, of *Philadelphia county*: Of January Term 1880, No. 131.

Libel in divorce, *a vinculo matrimonii*, filed by Robert S. Ralston against his wife, Mary N. Ralston. The libel charged the respondent with desertion. The subpœna, libel, interrogatories and notice of the meeting before the examiner were all served personally on the respondent, who entered no appearance, filed no answer, and did not attend before the examiner. The evidence showed that after the marriage, which took place in Wilmington, Delaware, in 1865, the respondent had continued to reside in Wilmington with her mother. Libellant, who was an officer in the U. S. Revenue Marine Service, and necessarily absent on shipboard the greater portion of the time, resided with her whenever he was on shore. In 1870, libellant

[Ralston's Appeal.]

was mustered out of the revenue service, and was for some two years without any permanent employment. He then entered the employ of the Philadelphia & Reading Railroad Co., and is still in their employ. When first employed by the railroad company, his duties permitted him frequently to visit his wife in Wilmington, and he consequently spent most if not every Saturday and Sunday with her. Subsequently his duties became such as to prevent him from absenting himself from his office excepting at rare intervals. The respondent, when spoken to by him on the subject, frequently expressed her determination of never coming to Philadelphia to live. During this time the libellant made his home in Philadelphia with his mother. In March 1876, libellant's mother died, and on the occasion of her funeral he informed respondent that he wanted her to come to Philadelphia to reside, stating that he would take a house for her and go to house-keeping, or would take board if she preferred it. To this arrangement respondent then consented, but when some two or three weeks afterwards, libellant visited her in Wilmington, she positively refused to either leave her mother or to remove her mother to Philadelphia with her. Since that refusal there has been no further intercourse between the parties, except that libellant has regularly remitted an allowance of $40 a month to the respondent for her support.

After the examiner's report was filed, a rule was taken to show cause why a divorce should not be decreed. This rule and a copy of the examiner's report were also duly served upon the respondent. Of these no notice was taken by her, and an *ex parte* argument on the rule was held before the court, Biddle, J., after which the court below discharged the rule, in an opinion, saying:

" That the domicile of the husband is not by implication that of the wife when the purpose is to destroy her maritial rights was decided in Bishop *v.* Bishop, 6 Casey 416; Colvin *v.* Reed, 5 P. F. Smith 375; Reel *v.* Elder, 12 Id. 308. And that although the law of the place of the actual bona fide domicile of the parties gives jurisdiction to the proper courts to decree a divorce, it means the domicile of both parties. And that nothing but the possession of the person of the wife before or at the time of the proceeding can warrant another state to subject her to its jurisdiction. The injured party must seek redress in the forum of the defendant, unless the defendant has removed from what was before the common domicile of both.

" The case here is almost identical with that of Colvin *v.* Reed. The husband and wife residing in Wilmington, Delaware; he gets employment in Philadelphia, and finds his return to his home irksome and inconvenient. He asks his wife to accompany him to Philadelphia to live, and she replies that she cannot leave her mother. At the end of two years, without further communication, he asks to be divorced here, on the ground of wilful and malicious

[Ralston's Appeal.]

desertion on her part. As he had never previously provided a home for his wife, but had lived with her at her mother's, he had placed his wife under obligations to her mother, in addition to those which a child naturally owes to a parent. It certainly was natural, therefore, that she should at least hesitate to obey his first summons. His first summons, however, appears to have been his last, for he does not pretend that he ever repeated the request. It is rather stretching a point therefore, we think, to hold that this was persisting in her desertion for two years, even if we brought ourselves to the belief that it was wilful and malicious in its inception. The complainant by his own oath makes out a technical demand and refusal, with two years' absence, sending funds to his wife in the meanwhile, and then in a jurisdiction foreign to their only joint domicile, which he has left, applies for a divorce from his wife. In questions of divorce a case technically made out is not one which recommends itself to our favorable consideration. Husbands who are too willing to have their iniquities made manifest, and wives who acquiesce with such cheerfulness in their misfortunes as to supply all the necessary evidence to establish them, generally fail to convince us that, in the words of the Act of 1815, 'the application is not made out of levity, or collusion, or from the mere purpose of being separated from each other.' If the husband was wilfully and maliciously deserted here, he certainly has borne it with wonderful philosophy and patience. We think, therefore, that even if we had jurisdiction over the person of the wife, the evidence here presented would fail to satisfy us of her wilful, malicious desertion, without adequate cause, for the space of two years from her husband. But as the wife has never resided within our jurisdiction, we think, in conformity to the cases we have cited, the motion should be discharged."

The libellant took this appeal, and alleged that the court erred in this action.

*James L. Ferrier*, for appellant.—The reasonable cause which justifies a wife's desertion and abandonment of her husband, must be such as to entitle her to a divorce: Eshbach *v.* Eshbach, 11 Harris 345; Angier *v.* Angier, 13 P. F. Smith 450.

The provision of the Act of 13 March 1815, sect. 2 and 3, Purd. Dig. 510, pl. 12 and 13, providing for proceedings in divorce suits, all contemplate, that the residence of the respondent need not be within the limits of this Commonwealth, in order to give the courts jurisdiction. The practice of our courts in authorizing service outside of the Commonwealth, in such cases has the sanction of forty years duration, and has received the approval of the learned judge himself, who delivered the opinion of the court below: Snyder *v.* Snyder, 10 Phila. 306; Harvey *v.* Harvey, 2 W. N. C. 225; Hollister *v.* Hollister, 6 Barr 452.

[Ralston's Appeal.]

By the Acts of April 26th 1850, sect. 6, Purd. Dig. 509, pl. 6, and of April 22d 1858, Id. 510, pl, 10, if either a husband or a wife is guilty of desertion or adultery, no matter where the parties are domiciled, and afterwards the innocent party removes to this state, and by a residence of one year evinces his or her intention of becoming a bona fide citizen or resident of this state, the courts of this state shall have jurisdiction to grant such a party a divorce, without any regard to the domicile or residence of the other party, upon due proof of the charge set forth in the libel. The acts, by their provisions, that the applicant in such cases must be a citizen of this Commonwealth, or a resident therein for one year, contemplate, that the respondent might be a resident or citizen of some other country or state.

No paper book nor counsel *contra*.

The judgment of the Supreme Court was entered February 16th 1880,

PER CURIAM.—We know no authority for a sheriff in this state to depute a sheriff in another state to execute a writ in the bailiwick of the latter, so as to give to it the effect of a personal service. A service thus made, cannot have the effect of a legal service made within this state : Coleman's Appeal, 25 P. F. Smith 441.

It was by such an invalid service, the appellant claims to have brought the appellee within the jurisdiction of the court ; and then, mostly on his own evidence, and without any appearance of the appellee, he sought to procure a decree of divorce. This cannot be done. Still further, an examination of the evidence shows, the court was right in refusing the decree prayed for on the merits of the case. During all the time the appellee was separated from her husband, his evidence shows that he made her an allowance, and remitted her not less than $40 a month. This fails to establish that wilful and malicious desertion and absence contemplated by the Act of Assembly.

> Decree affirmed, and appeal dismissed at the costs of the appellant.

A motion was subsequently made for a re-argument, which the court refused in an opinion as follows, delivered March 29th 1880, by MERCUR, J.

In this application for a re-argument it is assumed that we did not give due weight to the Act of 13th March 1815, under which the appellant claims to have made a service. It declares "upon due proof at the return of the said subpœna that the same shall have been served personally on the said party wherever found, or that a copy had been given to him or her fifteen days before the

return of the same," a divorce may be decreed. It is contended in case the libellee in divorce is not found within the bailiwick of the sheriff, the latter may, under this act, depute some person to make the service in another state. If a legal service could thus be made in Delaware it can be in California. Such cannot be a true construction of the statute. The language "wherever found" cannot be so construed as to give to a court of this state extra-territorial power to bring within its jurisdiction the person of a citizen and resident of another state. The property found within this state of a non-resident may be reached and charged and sold in the enforcement of a debt resting on a contract without any personal service on the debtor. In the case of an ordinary debt the person of a non-resident defendant not found within the state cannot be reached by any process issued by a court of common law. In cases where the language of the statute would seem to give extra-territorial power this court has denied its exercise. Thus the 16th section of the Act of 13th June 1836, relating to the removal of paupers, authorizes them to be removed "at the expense of the district to the city, district or place where he was last legally settled, whether in or out of Pennsylvania." It has, however, been held the provision for a removal into another state is of no force or effect: Overseers of Limestone v. Overseers of Chilisquaque, 6 Norris 294. The first section of the Act of 6th April 1859, authorizes any court of this Commonwealth having equity jurisdiction, in any suit in equity instituted therein concerning property within the jurisdiction of the said court, to order and direct that any subpœna or other process to be had in such suit be served on any defendant therein "then residing or being out of the jurisdiction of said court wherever he, she or they may reside or be found." It further provides for the proof of service both within and without the limits of the United States. It was held in Coleman's Appeal, 25 P. F. Smith 442, that process thus issued in this state and served in another state on a resident thereof could not give jurisdiction of the person thus served. The Act of 1815 is less explicit than the two we have cited of an intention to extend the jurisdiction of a state official or tribunal beyond the limits of our state. The service of a subpœna in divorce thus made in another state on a resident thereof for the purpose of giving jurisdiction of his person is not authorized by any law. If any such practice has prevailed it is a vicious one and should be abolished. The motion for a re-argument is denied.