## Crandall, Appellant, *v.* Crandall.

*Divorce—Desertion—Separation.*

Where a husband has suggested and encouraged a separation between himself and his wife, he cannot charge her with wilful and malicious desertion within the meaning of the divorce laws.

Argued Nov. 24, 1916. Appeal, No. 363, Oct. T., 1915, by plaintiff, from decree of C. P. No. 4, Philadelphia Co., June T., 1914, No. 277, dismissing libel for divorce

Opinion of Court below. [66 Pa. Superior Ct. in case of T. Vaughn Crandall v. Clara S. Crandall. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Libel for divorce.

CARR, J., filed an opinion which was in part as follows:

This is a proceeding in divorce upon the ground of desertion. The parties separated December 7, 1912, and the record presents the question whether it is desertion. The familiar rule is that separation is not necessarily desertion, which is an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in without cause for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other. Where a husband has suggested and encouraged a separation between himself and his wife he cannot charge her with wilful and malicious desertion: Middleton v. Middleton, 187 Pa. St. 612.

In Kings v. Kings, 36 Pa. Sup. 33, it was held that mutual consent to the separation, not revoked by either party, is as fatal to an application for a divorce upon the ground of desertion as would be acts on the part of the libellant which would give the respondent legal cause to leave him and to obtain a divorce from him. What may have been desertion in its inception, but has become a separation with mutual consent within two years, is not ground for divorce. The mutual consent that will prevent a divorce upon the ground of desertion may be inferred from the conduct of the parties, and need not be put in the form of a solemn written agreement. See also Thompson v. Thompson, 50 Pa. Sup. 159. In Pierce v. Pierce, 53 Pa. Sup. 129, it was held that a libel for divorce by a husband against his wife for desertion will be dismissed when the great preponderance of the evidence is in favor of the conclusion that, if the libellant did not actually expel his wife from his

house, she left by and with his consent and expressed wish.

In view of the evidence in the case at bar and of the conclusion reached upon this motion, the language of RICE, P. J., in King v. King, supra, should be referred to: "This rule does not imply that if the appeal be from a decree refusing the divorce, it is not incumbent upon the appellate court to review the evidence; but the case first cited is authority for this proposition, at least, that in reviewing the evidence brought up on such appeal, where it is in irreconcilable conflict and the correct determination of the issues of fact depends upon the determination of the veracity of witnesses who have given opposing testimony, the appellate court should, amongst other things, consider and give weight to the fact that the judge who saw and heard the witnesses and observed their manner of testifying, had a much better opportunity than the appellate court to form a correct judgment as to their credibility."

Moreover, an order of the desertion court made upon April 1, 1913, compelled the libellant to pay ten dollars per week alimony, and the case of Bauder's App., 115 Pa. St. 480, should be also considered in which it was held that: "The record of the proceedings for desertion in the Court of Quarter Sessions of the peace, in which the husband is ordered to pay a fixed sum per week for the support of his wife, is admissible in evidence to be considered by the jury on the trial of an issue in proceedings for a divorce by the husband against his wife on the ground of desertion; but it is not a legal bar to the divorce prayed for." And in Hahn v. Bealor, Ex'r, 132 Pa. St. 242, it was held, in an action by a surviving husband claiming an estate by courtesy in land, of which his wife died seized, that the record of an order in the Court of Quarter Sessions adjudging him on complaint of the wife to pay her a weekly allowance for maintenance, is evidence persuasive of a prior wilful desertion by him, but not conclusive thereof.

The parties at bar were married December 31, 1910, at the house of the respondent's mother in Dorchester, Massachusetts. She was at that time forty-seven years of age and he was seventy-five years of age. She had been a school teacher in Boston. He met her in August of 1910 at Kennebunk Beach, and, so far as the testimony shows, the marriage was made at his instance. He is a practicing physician in this city where the parties lived at first at 1910 Spring Garden street, and afterwards in October, 1911, they moved to Cynwyd, where the desertion occurred December 7, 1912.

Even in the Spring Garden street house, for one reason or other, difficulties between them arose, for the testimony of his daughter, Mrs. Chambers, is (p. 55): "Q.—As I understand, the first intimation you had that there was any lack of harmony or any trouble was shortly after Thanksgiving in 1912, when Mrs. Crandall came to your home and said something about your father using a drug? A.—You asked me if that was the first intimation that I had of trouble? Q.—Yes. A.— No, it is not. Q.—What was the first intimation? A.— The first intimation of things not going quite right dates back to their residence in 1910 Spring Garden street. Q.—After that did you see any evidence of friction between them? A.—Yes. Not friction. Don't put it that way. Q.—What would you call it? A.—I don't know as I can find a word. Q.—They were not getting along well together? A.—Not getting along smoothly."

Mrs. Chambers, in an interview with the respondent in November of 1912, with regard to the libellant's physical and mental condition says (p. 58): "A.—I never would say that my father was using a drug. Q.—Did you say that you had noticed his actions and that you believed that he had been doing something of that kind? A.—I said I noticed that he was irritable and nervous and run down in health and everything, and if anything of this kind was going on it would be because of that, and I asked her to prove it."

The respondent is of a timid disposition, for the libellant states that one complaint she made of the house, 1910 Spring Garden street, was that she was fearful of the size of the rooms and was afraid of large rooms. It was his practice to keep a revolver with cartridges in the bureau drawer in the house at Cynwyd. She testified that he had threatened to kill her, or threatened to kill himself, so that she might be charged with the murder. She suspected that he was the user to excess of a drug, which affected his nerves and temper. He denied that he threatened her or was the victim of a drug habit. However, whatever the truth is as to these facts, the respondent in fact on Saturday, November 23, 1912, called to see his daughter, Mrs. Chambers. She states that she was distressed beyond measure, and went to Mrs. Chambers for assistance and advice and detailed her fears and suspicions. Mrs. Chambers states that she knew that her father had been in the habit of using an atomizer as a nasal douche even before the death of his first wife. To the respondent's suggestion of fear of violence from the libellant, Mrs. Chambers suggested that she discontinue the use of the libellant's bed room, and to sleep with a locked door in the guest room. This change was made by the respondent on or about that date. The respondent made a second visit to Mrs. Chambers on or about December 2, 1912, for sympathy and consolation. The libellant contends that these visits to Mrs. Chambers and the conversations detailed show that upon those dates the respondent had then formed the intention of desertion. The probabilities of the case, however, do not support that contention.

The libellant claims that the respondent was a victim of the practice of self-abuse, and that he had knowledge of it as soon as they were married. He, however, until December 7, 1912, made no complaint......

As is so often the case with charges and countercharges of misconduct between husband and wife, difficulty is here found to determine the truth; for the of-

fenses are committed in the absence of third parties or disinterested witnesses.

From the testimony here it is difficulty to decide whether the physical and mental condition of the libellant in November and December, 1912, was the result of the use to excess of a drug. Not only the testimony of his daughter bears upon the subject, but also that of a witness who had been an assistant in his profession, and who stated that a rumor of the kind was in existence, although he himself had observed no signs of its use in the libellant. Whatever the cause was, however, unquestionably, the mental and physical condition of the libellant at the time of the alleged desertion in December, 1912, was not normal, but was out of the common. Whether the respondent's life was in actual danger is beside the question. She herself believed it to be so; otherwise she would not have gone to her husband's daughter with such complaints. It is plain that her visits to Mrs. Chambers were made for the purpose of advice and sympathy, and not as precursors of the separation upon December 7th. Apparently, until that morning she had no intention of leaving her husband, and even after that date, when she was still in Philadelphia, but living at the Young Women's Christian Association rooms, and had gone to see the libellant upon the Saturday of the first week in January, she debated in her mind if she should return, provided he would retract the scandalous statements regarding her habits. Her use, therefore, of a separate sleeping room is explicable as readily upon her statement of fear as that given by the libellant of an opportunity for practicing a secret vice. Moreover, it is equally difficult to decide what the truth is with regard to that charge. The respondent makes explicit denial. But assuming the libellant's statement to be true, that the discovery was made by him when he was newly married in December, 1910, it is remarkable that no disclosure was made by him of the fact, nor remonstrance made to her, nor effort

shown to induce a correction of the habit. In fact his admission is that he assisted her in the practice. With regard also to the intention to desert, the fact is significant that upon December 31, 1912, the libellant filed a suit in divorce, not upon that ground but upon that of cruel and barbarous treatment. Evidently upon that date, notwithstanding the fact that she had been absent from his home since December 7th, and her whereabouts then were unknown to him, he did not believe that she had formed an intention to desert.

But as in cases of alleged physical maltreatment or beating of the wife by the husband, the testimony of an eye witness or the marks of violence are invaluable witnesses, so in this case the record discloses letters of the libellant which are of great assistance, bearing upon the truth or falsity of the charges made by the respondent of his illtreatment requiring her to leave the room. The letter written by him to her mother and also a statement or prospectus for the public prepared by him and sent to the respondent, distinctly bears upon the likelihood of the truth being upon her side. She was no longer in Philadelphia. He had no reason to fear disclosures made by her of his habits in the use of drugs. If his charges against her were true, his letters to her mother and to the general public prove him to be a vindictive and cruel disposition, which was innate, and not aroused by the fact of her separation and refusal to return to his home. In the face of such letters and charges, it is impossible to conceive that either he would in sincerity desire her return, or that she with any self-respect could renew a marital relationship, or that the law compels her to do so. They disclose mental and moral characteristics which were not incident to his age, eccentricity of manner or peculiarities, and produced a condition of married life with the libellant which was distressing, not merely because of its feature of dullness.

Notwithstanding an inclination to support the finding of the master, for the reasons referred to in the case of

160    CRANDALL, Appellant, *v.* CRANDALL.

Assignment of Error—Opinion of the Court. [66 Pa. Superior Ct.

King v. King, supra, yet in view of the defendant's testimony and of the letters, the exceptions are sustained, and the libel is dismissed.

*Error assigned* was decree dismissing libel for divorce.

*Victor Frey,* with him *Augustus T. Ashton* and *Henry A. Craig,* for appellant.

*William T. Connor,* with him *John R. K. Scott,* for appellee.

PER CURIAM, March 16, 1917:

The libellant and respondent were married in December, 1910, when the husband was 75 and the wife 47 years of age. After living together in apparent amity for two years, the wife left the home, and has continuously remained separated from her husband. The justification for her withdrawal from the home is the controlling question in controversy. The testimony is very conflicting, and after a careful examination of the whole record we adopt the conclusion reached by the learned trial judge, dismissing the libel for the reasons he states in his opinion.

The decree is affirmed.