## Bloom v. Bloom.

*James R. Scouton*, for libellant.

FINE, J., July 19, 1928.—The libellant seeks a divorce on the ground of desertion. The subpœna was served upon respondent personally on Dec. 16, 1926, in Scranton. Personal service of master's notice of hearing was duly made upon respondent in Montrose, Susquehanna County. Respondent did not file answer to the libel nor did he appear at master's hearing.

The master recommended that a decree *a. v. m.* be granted the libellant.

Proof of service of final notice discloses the respondent was personally served with said notice in Hallstead, Susquehanna County.

We have carefully perused and scrutinized the record and we find the following

### Facts.

1. The libellant, aged forty years, and the respondent, aged forty-three years, were married in Scranton on Sept. 11, 1918, by Rev. Herman Geisen. The libellant immediately before marriage resided at Laketon, Luzerne County, and the respondent at Hamilton, of the State of New Jersey.

2. That the present residence of the libellant is Laketon, Luzerne County, Pa., and the last known residence of the respondent was No. 28 Isabelle Street, Binghamton, N. Y.

3. That the libellant and the respondent have lived apart since September, 1924.

4. That the respondent did, on Sept. 22, 1924, wilfully and maliciously desert the libellant and absent himself from the habitation of the libellant without any just or reasonable cause, and that such desertion hath been persisted in for two years and upwards.

## Discussion.

Respondent is a carpenter, shiftless and markedly lazy. He applied himself to his trade only when it pleased him. At no time did he recognize his marital obligation, and he consistently failed to provide for the maintenance and support of his wife. The respondent may be termed an "odd job man," that type of physical structure which ultimately and inevitably comes, by request, to the Domestic Relations Court—there to be, as surely as his arrival, the most cankerous pest in the solution of the many social problems devolving upon that court.

It is axiomatic such man marries an industrious and bread-bringing wife— dutiful to the extreme; loyal even to error; vine-clinging to the point of apparent idiocy. When the vagabond husband tires of such enslaved spouse, as he usually does, and leaves the domicile, then the mystic cloak enshrouding the wife is removed, and she gives exercise to good sense and judgment for the first time since the mental lapse immediately preceding the plighted troth.

We are, therefore, clearly satisfied from the evidence that the respondent deserted the libellant and is entitled to a divorce, unless (1) there is collusion between the parties, or (2) unless the Act of May 17, 1921, P. L. 899, applies to service in actions in divorce.

1. The service of the subpœna and notices on the non-resident respondent, when visiting Scranton, Montrose and Hallstead, may create suspicion of collusion, but it is suspicion merely, as the testimony does not show collusion within the meaning of the law on that subject. The respondent possessed a roaming propensity, which, together with other evidence, justifies us in concluding there was no collusion in this action.

2. Does the Act of May 17, 1921, P. L. 899, require service of all process in divorce actions to be made by the sheriff?

The said act, entitled "An act regulating service of process from the Courts of Common Pleas or other courts of record, and extending the territorial jurisdiction thereof in certain cases," provides:

"Section 1. That in all cases wherein any cause, subject-matter, property or interest is within the jurisdiction of any Court of Common Pleas or other courts of record, and one or more of the parties in interest therein resides beyond the limits of such jurisdiction but within the Commonwealth, the authority and jurisdiction of courts shall extend to all rules, notices, and orders necessary in the course of procedure to be served upon the party or parties residing beyond such jurisdiction and within the Commonwealth. In such cases, any and all process issuing out of the court having jurisdiction of the subject-matter shall be directed to the sheriff of the county, who shall deputize the sheriff of the county wherein such person resides, who shall make service thereof in the same manner and with the same force and effect as if the person had been served within the county wherein the process originated.

"Section 2. This act shall not apply to the writ of summons."

The Act of March 13, 1815, P. L. 150, prescribes the mode of serving a subpœna in divorce. There is nothing in the act, either by its express terms or by necessary implication, which requires a service by the sheriff. The subpœna is not directed to him, but to the respondent, and it may be served

by any one. No special authorization so to do is required from the court of original jurisdiction: Fillman's Appeal, 99 Pa. 286.

The provision of the Act of 1815 authorizing personal service "on the said party, wherever found," has not been changed by any of the many amendatory or supplementary acts of assembly regulating divorce actions. The words "wherever found" were held to mean "anywhere within the Commonwealth," and cannot be construed to give a court of this State extraterritorial power to bring within its jurisdiction the person of a citizen and resident of another state: Ralston's Appeal, 93 Pa. 133.

It is well settled the subpœna runs throughout the State and may be served on the respondent wherever he may be found. As the Act of 1921 was passed for the purpose of "extending the territorial jurisdiction thereof (Courts of Common Pleas) in certain cases," it is difficult to conceive any legislative intent to apply the provisions of this act to divorce actions, thereby impairing the jurisdiction which Courts of Common Pleas theretofore had. Under the existing laws, a non-resident within this State may be served with the subpœna by any person. The Act of 1921 limits the service of process "upon the party or parties residing beyond such jurisdiction (Court of Common Pleas) and within the Commonwealth," and restricts the mode of service of the process, in that it "shall be directed to the sheriff of the county, who shall deputize the sheriff of the county wherein such person resides, etc.," to make service of the process. By the terms of the Act of 1815 and supplements, the subpœna is directed to the respondent, not to the sheriff.

"Extend" is defined by the Standard Dictionary as, "To make larger in space, time, or scope; carry out farther than the original point or limit; enlarge or lengthen the bounds or dimensions of; lengthen; widen; enlarge; amplify." To extend implies an intent not to qualify the laws then existing, but rather to enlarge, lengthen or widen the scope of them.

The act did not extend the territorial jurisdiction of Courts of Common Pleas in divorce actions, nor, as we construe it, was it the intent of the legislature to have its provisions apply to such actions. The evident intent of this enactment was to extend the authority of the courts to actions where certain rules or notices might necessarily be required to be served on residents of other counties in the State, as, at the time of the passage of this act, there was ample provision made for service of summons, writs and bills in equity and subpœnas in divorce. There was not, for instance, sufficient authority for service of rules on heirs in actions concerning real estate. There is nothing in the act which applies to original process, except in the 2nd section, as follows: "This act shall not apply to the writ of summons."

We are of the opinion that the said act does not apply to the service of subpœna in divorce, or to any rules, orders or notices incident to such litigation.

We, therefore, conclude as a matter of law:

1. That the respondent did, in violation of his marriage vows, wilfully and maliciously desert the libellant and absent himself from her habitation without any just or reasonable cause for a period of two years and upwards.

2. That there was no collusion between the parties.

3. That service of subpœna and all notices was proper, the Act of May 17, 1921, P. L. 899, not applying to actions of divorce.

Accordingly, we do hereby sentence and decree that Miriam Bloom be divorced and separated from the nuptial ties and bonds of matrimony heretofore contracted between her, the said Miriam Bloom, libellant, and the said Floyd Bloom, respondent.      From Frank P. Slattery, Wilkes-Barre, Pa.