Halley v. Halley, Appellant.

Argued November 21, 1933.

Before KELLER,
CUNNINGHAM, BALDRIGE, STADTFELD and JAMES, JJ.

*Joseph G. McKeone*, and with him *Truman D. Wade*,
for appellant.

*Walter S. Talbot*, for appellee.

OPINION BY CUNNINGHAM, J., May 8, 1934:

This is an action for divorce by the husband, Julian
Halley, upon the ground of desertion. The respond-

ent, Helen Halley, filed an answer denying the charge, and the case was referred to a master who recommended that a divorce be granted. Exceptions to his report were overruled by the court below and a decree entered. Respondent's appeal from that decree raises two questions:

First, whether the evidence relied upon to establish the alleged desertion was sufficient to support the decree; and

Second, whether contributions by libellant to respondent of $8 per week after their separation established conclusively that the separation was voluntary.

The parties were married at Elkton, Maryland, on April 15, 1924. Respondent then had a child, aged five, by a former husband. Immediately after their marriage, the parties went to live with libellant's parents in East Nottingham Township near Oxford, Chester County, where they spent the winter and the following spring. During this period, libellant's father died, but his mother continued the home as well as the family florist business, with which libellant was connected. Some time in July, 1925, libellant took respondent to her mother's house and rented a room for himself in the vicinity while they were arranging for an apartment in Oxford. They never lived together thereafter. The master found that respondent had refused to live with libellant in the apartment which was selected, and that such refusal constituted a wilful and malicious desertion. The case turns upon what took place between the parties at that particular time; the testimony of the parties is irreconcilable; as required, in the absence of jury trial, we have made an independent examination of the evidence.

Libellant testified that while his wife was content to live at his mother's home, she took little or no part in the housekeeping or in the family business. Thinking that his wife would have more interest and re-

sponsibility in a home of their own, he rented a furnished apartment on one of the better streets in Oxford in the early part of July, 1925, and paid a month's rent in advance. Meanwhile, because of some minor unpleasantness at home over the child's schooling, libellant took respondent and the child to her mother's home to remain while the apartment was being prepared; as stated, he rented a room at a neighbors, not far away. During this period he saw his wife in the evenings; they discussed the apartment, and on one occasion he went with her to Wilmington and purchased linen and curtains. The next day, to quote libellant's testimony, she said to him: " 'I won't go there to live. I won't put it in any shape to live in. I won't put the curtains up. I won't do anything.' I said, 'Helen, you will have to live there because I don't know where else to go,' and then she called me a damn, dirty cur.''

Upon respondent's demand her clothes and those of her child were brought to her mother's home. On August 10, 1925, libellant went to see respondent there and asked her if she would not take the apartment and live with him and she again replied in the negative. Libellant did not again see his wife until February, 1926, by which time she had moved to Wilmington. He sought her out there and asked her if she would not come to live with him again. According to his statement, she replied she would think it over and let him know, but he never had any further word from her.

His story was corroborated in part by his mother, and also by a witness who testified that in the spring of 1926 she met respondent on the street in Oxford, and that, respondent, when asked whether they were living together, replied that libellant had been down to see her but that she was not going to live with him.

According to respondent, she was highly desirous of obtaining a separate apartment while they were living

in her mother-in-law's house, but nothing was done prior to their departure. She testified that on a certain day in June her husband was going to Kennett Square for some plants "and said he would leave [her] at [her] mother's home and would come for [her]"; that she "waited up until midnight and he never came." She further testified that she had no idea that this was the beginning of a separation. However, she admitted that, after she was taken to her mother's house, her husband came to see her in the evenings and that they arranged together to take the apartment which she selected. She also admitted the trip to Wilmington to buy linens took place, but claimed that shortly thereafter her husband told her over the telephone he would not buy any furniture for the apartment, and refused to live there with her. The next day she went, according to her version, with the daughter of a local clergyman to see libellant at his greenhouse and he there told her " to get the hell out and go to Wilmington and go to work." The clergyman's daughter, when testifying, recalled the trip to the greenhouse, but was able to remember little about the conversation except that the parties discussed the apartment and that the husband used the word "hell."

In rebuttal, libellant explained the conversation in the greenhouse by saying that his wife came out to discuss the matter and started to cry and that he told her he wished she would not do that as he had gone through enough "hell" the evening before. The testimony of the other witnesses adds little to the picture.

After a careful consideration of the whole record, we accept libellant's version of the facts. The testimony of libellant and of his mother impresses us, as it did the master and the court below, with its frankness.

Respondent's testimony is often exaggerated and

replete with minor complaints about the uncomfortable way in which she lived and about her physical, condition. It is hard for us to believe, as respondent would have us do, that at the time she was taken to her own mother's house she had no thought that they were finally leaving the Halley home. This is not only improbable on its face, but is also inconsistent with her admission that she and her husband remained upon friendly terms for the time being, saw each other in the evenings and mutually arranged for the apartment. We also give credence to libellant's statement that he rented the apartment and paid a month's rent; it is not likely he did this merely as a gesture. Such conduct is a refutation of the charge that he was trying to get rid of respondent.

On the other hand, the refusal of respondent to undertake the responsibilities of the apartment is quite consistent with her character as portrayed by the evidence.

After considering all the evidence, we are led to the conclusion that respondent's story cannot be accepted; that libellant did make a bona-fide attempt to establish a common home and that respondent refused to occupy it with him. Such action amounts to desertion upon her part.

The other question involved relates to the weight to be given to the evidence of weekly contributions by libellant for the support of respondent. As we have pointed out in Olson v. Olson, 27 Pa. Superior Ct. 128, and in Ulizio v. Ulizio, 96 Pa. Superior Ct. 91, 103, such contributions are not conclusive evidence that the separation was voluntary but may be explained. In our opinion, a satisfactory explanation has been given by libellant; he said the payment of a weekly sum was demanded by respondent after she refused to live with him, coupled with a threat of arrest if not paid. While this is denied by respondent, we are

again inclined to believe libellant, particularly in view of his subsequent request in February, 1926, that respondent return to live with him. Such a request is inconsistent with a consentable separation. Apparently, respondent relied below upon Ralston's Appeal, 93 Pa. 133, to sustain her point. The divorce in that case, however, was refused primarily because of a lack of jurisdiction over the person of the wife; furthermore, an examination of the facts as stated in the opinion shows that the libellant there had never provided a home for his wife, but removed to another town and saw her only at rare intervals. A request was made by him that she join him at his new abode, but she refused to leave her mother. He then began to make a regular allowance for her support and at the end of two years, without further communication with her, sued for divorce on the ground of desertion. The lower court there properly held that a wilful and malicious desertion could not be predicated on such facts. The case at bar presents an entirely different situation. Not only did libellant offer, in good faith, a common home, but he also did everything within his power to persuade his wife to live with him there. Under all the circumstances here present, we cannot hold that either the original separation or its continuance was with the consent of libellant.

Appeal dismissed and decree affirmed.