## Lyons *v.* Lyons, Appellant.

Argued October 25, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Louis A. J. Robbins,* and with him *J. A. Welsh,* for appellant.

*Fred B. Moser,* for appellee.

OPINION BY BALDRIGE, J., February 1, 1935:

The libellant in this divorce action alleged that his wife wilfully and maliciously deserted him on July 25, 1930. Respondent, in her answer, denied the desertion, and attributed her withdrawal from their home to his cruel and barbarous treatment that endangered her life and to such indignities offered to her person as to make her condition intolerable and life burdensome. The master found that the evidence sustained the averments of desertion in the libel, that the weight of the evidence did not support respondent's charges against her husband, and recommended the granting of a divorce. Exceptions to the master's report were dismissed by the court, and a decree of divorce was entered.

The libellant established convincingly a right to a divorce, unless the wife showed reasonable cause for her leaving and remaining away from her husband.

It was incumbent upon her to prove clearly such conduct upon the part of her husband as will warrant the dissolution of the marriage bond: Strobel v. Strobel, 100 Pa. Superior Ct. 536. Let us now look at the evidence to determine whether the wife carried her burden.

The parties to this action were married in Philadelphia by a magistrate on December 5, 1924, and made their home in Mount Carmel, where they lived until their separation. One child was born to the union on May 3, 1926. There were two brief separations prior to the final departure of the wife from their home. The first was on June 14, 1930, when she went to Centralia and telephoned her husband she would not return unless he would have the marriage solemnized by a religious ceremony. The husband acceded to that request. The ceremony was performed, and the wife returned to their home and remained there until July 2, 1930. She left again on that date, going to her sister's home in Philadelphia. Shortly thereafter, the libellant went there and persuaded her to return. Respondent remained at their home until the final separation on July 25, 1930.

The wife endeavored to justify her withdrawal from the home by alleging that the winter before their child was born, her husband became discontented and irritable, stayed out all night, that on the 26th of March, previous to the birth of their child, he pushed and kicked her, which necessitated her going to the hospital for three or four days; that again on May 2nd he assaulted her, and, as a result, she became unconscious and when she came to her senses she was lying in bed, wet from water he had thrown on her; that she then went to the hospital and the following morning their child was born; that he tried to choke their baby to keep it from crying, ran around with another woman; that he returned from a trip to Atlantic City with body

lice, which were communicated to her; that he had contracted a loathsome disease, threw a plate at her, used vile and profane language, ordered her out of the house; that he would open the windows and swear and curse at her so that the neighbors would hear him, etc. The libellant denied all these charges and said that he had always treated his wife kindly and with consideration and had never criticized her to any extent, other than complaints he had made for her failure to get him his meals; that he tried to induce her not to leave him; that he went to Philadelphia for the purpose of effecting a reconciliation; that when she came to their house after finally leaving to get her clothing and effects, he again tried to induce her to stay; that he attempted, through her brother-in-law, at whose house she stayed when in Philadelphia, to persuade her to return.

While we recognize that it is our duty to examine the testimony carefully and make our independent finding, the report of a master, who has had the advantage of seeing and hearing the parties and their witnesses, is to be given "fullest consideration:" Langeland v. Langeland, 108 Pa. Superior Ct. 375, 164 A. 816; Wagner v. Wagner, 112 Pa. Superior Ct. 485, 171 A. 419. In this connection, not only the master, but the court also had the advantage of seeing the parties and hearing the testimony, as a portion of the testimony taken before the master was lost and they appeared before the court.

While there is some dispute as to whether or not there was a consentable separation, we accept as true the statements of the libellant that he made reasonable efforts to have his wife remain at home, endeavored to effect a reconciliation after she had left, and that he never encouraged or consented to her withdrawal. We are impressed, as the master and the learned court below were, with the absence of any corroboration of

the wife's testimony. No neighbors were summoned who heard the libellant use profane language. She did not call her brother-in-law to deny that her husband, through him, had tried to placate her, nor were any hospital records introduced in evidence or any medical experts called to corroborate her charge of physical abuse, or that the husband had a venereal disease. It appears from the evidence that the libellant had suffered from an ulcer of the stomach and that when he was in the hospital numerous Wasserman tests were made, which were all negative. Dr. Jacques, the physician who attended him, said in very emphatic language that, in his opinion, the libellant did not have and never did have syphilis.

There was further testimony upon the part of the wife that her husband took her to a doctor in Sunbury to have an illegal operation performed on her. The husband not only denied that charge, but Dr. Emily Shipman testified that the wife requested her to perform an illegal operation on her and she refused. The respondent flatly denied the truthfulness of Dr. Shipman's testimony.

The respondent petitioned the Municipal Court of Philadelphia County for support and at a hearing held there on July 8, 1931, the court made an order against the libellant. At that time the husband again expressed a desire to have his wife return, but when she was asked if she wanted to go back to her husband, she said, "No, sir." The court: "Q. Are you quite sure of that? A. Yes, it is a question of dollars and cents with me now."

The respondent contends that the master failed to take into consideration, or give weight to, the order of the municipal court to pay an allowance to her and the child. We have on different occasions said that the record of such a proceeding is properly admissible in evidence, and is persuasive, but is not conclusive evi-

dence of a desertion by the husband. See Est. of A. S. Mehaffey, deceased, 102 Pa. Superior Ct. 228, 156 A. 746; Halley v. Halley, 113 Pa. Superior Ct. 206, 172 A. 403.

The respondent has failed to convince us that she withdrew from their home with the consent of her husband, or that there existed a legal cause for her refusing to live with him. The libellant is, therefore, entitled to divorce on the ground of desertion.

Decree is affirmed.