## D'Alfonso *v.* D'Alfonso, Appellant.

Argued September 29, 1939.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*James H. McHale,* for appellant.

*Robert F. Bogatin,* for appellee.

OPINION BY BALDRIGE, J., January 30, 1940:
We have this appeal from the order of the court be-
low granting a divorce on the ground of desertion. This

proceeding is venerable and the record inexcusably voluminous.

When the libellant was 22 and the respondent 17 they entered into a civil marriage on June 22, 1914, which was followed by a religious ceremony. Immediately after their marriage, the parties went to live with the parents of the respondent at 827 Montrose Street, Philadelphia. About a year and a half thereafter they moved, with respondent's parents, to 1128 Ellsworth Street, where they lived together until about June 24, 1919, when the libellant withdrew from the common domicile and has since lived in different places in Philadelphia.

The libellant filed a libel in divorce on August 12, 1920, wherein he charged respondent with cruel and barbarous treatment and indignities to the person. An answer was filed and on March 14, 1921, a master was appointed. On May 13, 1921, the libellant was properly permitted to amend his libel by including therein the charge of desertion (Act of May 2, 1929, P. L. 1237, 23 PS §17).

The last of several hearings was had on January 20, 1922. The master, whose report was not filed until May 29, 1936, recommended that a divorce be refused on the grounds of cruel and barbarous treatment and indignities, but granted on the ground of desertion.

The learned court below very justly condemns the long, unjustifiable delay, which may be attributable not only to the master's inaction but also to lack of diligence upon the part of the libellant in not requesting that a report be filed. During these intervening years, the libellant was paying support to his wife under an order of court, to which we will later refer.

The record shows that on June 23, 1936, the report of the master was approved. On July 3, 1936, a rule was granted to strike off the final approval of the report and to allow respondent to file exceptions nunc pro tunc. This rule was made absolute and thereafter the excep-

tions filed were dismissed and on December 7, 1936, a final rule in divorce was granted. On December 23, 1936, the court made the following order:

"We think this case should be sent back to the Master to take further testimony. It is unfortunate that the respondent should make this request on the day of the final rule, but in order that she can be assured of having every opportunity to present all her evidence, we feel that the Master should hold a rehearing and hear such testimony as she has to offer, and, of course, any rebuttal testimony which the libellant chooses to offer.

"We also note that the Master in his fifth conclusion of law has depended upon a calculation as to time which is inaccurate. We suggest that he make a proper amendment of this in filing a supplemental report."

Numerous hearings before the master were had thereafter. Six hundred twenty-four pages of testimony were taken, in addition to the two hundred sixty-nine pages contained in the original report. The master, in his last report, recommended that the divorce be denied and the libel dismissed. Exceptions were filed thereto, which were sustained by the court below, holding that the master's report had previously been absolutely confirmed and that the order of December 23, 1936, was made too late. It appears from this record, however, that the court made that order before the disposition of the final rule. The case was still within the court's grasp.

In divorce actions we are not inclined to be more technical than absolutely necessary, especially in procedural matters, as the state, as well as the immediate parties, is interested, in that our social structure is involved in attempts to dissolve marital relations. In any event, no exceptions were filed or an appeal taken to the order of December 23, 1936. We are of the opinion, therefore, that the entire record is properly before us for determination.

We will turn our attention now to the more important

382

facts. The libellant alleged that the home of the respondent's parents, where they first went to live, was a small, two-story house, containing six rooms, and was inhabited by about fifteen persons of both sexes, with inadequate and unhealthful sanitary arrangements; that the rooms were in a filthy condition, the bed linens dirty; that the wife refused to cook his meals, wash his clothing, and to provide generally for his welfare; that she upbraided him, without reason, regarding his relations with other women; that he was physically attacked on several occasions by members of his wife's family; that by reason of the conditions which prevailed he found living in that home intolerable and insisted upon his wife leaving and taking up housekeeping in other rooms he had arranged to rent, which met with her approval after she had inspected them. He asserts that his wife refused to leave her parents and live with him; that after making a last effort to live in their own quarters he left his home on June 24, 1919.

The respondent testified that the libellant never objected to living in the house with her parents. She denied that the home was not kept neat and clean and stated that her husband never complained of its condition. We are favorably impressed by the testimony of Dr. Beaver, a woman physician who attended the respondent and made frequent professional visits to this home. She stated that from her observation the linens and towels were clean and "everything was in perfect order." The respondent testified, and she was corroborated by other witnesses, that she was always ready and willing to live with her husband at her parent's home, and had requested him to provide a place where they could live with their children, even though it was only two rooms, but he refused to do so.

Rose Belardo, who, according to the libellant's testimony, was his housekeeper, testified that she and the libellant began living together as man and wife in 1920;

that a meretricious relationship continued until December, 1934. Libellant admitted, on cross-examination, that at the time this witness moved from libellant's home at 801 South Ninth Street he paid her the sum of $500. We would not place much credence on this witness' testimony if it were unsupported, as in a prosecution brought in 1928 against her and the libellant for adultery, in which they were acquitted, she denied her guilt, but a number of witnesses gave testimony which convincingly established that she and the libellant were living together for a number of years as man and wife.

We are aware that acts of adultery committed by a libellant after the date of the alleged desertion may not be urged as justification for the desertion. But, in view of the libellant's contention that he desired his wife to live with him, in a separate home from her parents, all the circumstances and conditions under which he was living, when the alleged offers to establish a separate abode were made, are of significance and throw light on the question whether the offers were made in good faith: *Litch v. Litch,* 89 Pa. Superior Ct. 15. In July, 1920, the wife instituted a non-support proceeding in the Municipal Court of Philadelphia County. The notes of testimony, which were offered in evidence, revealed that the wife, at that time, testified she was willing to live with her husband and that the libellant, when asked if he would resume marital relations, refused to do so. That support proceeding, resulting in an order for the payment of an allowance to his wife, did not of itself bar a divorce at his instance on the ground of desertion (*Van Dyke v. Van Dyke,* 135 Pa. 459, 19 A. 1061) ; but the record, although not conclusive, is admissible and is evidence against him, which requires a strong case to overcome: *Crandall v. Crandall,* 66 Pa. Superior Ct. 153; *Estate of A. S. Mehaffey,* 102 Pa. Superior Ct. 228, 156 A. 746.

The burden was on the libellant to show that his wife

refused, without cause, to change her residence. While the libellant alleges he had made arrangements to get other living quarters, his testimony and that of his witnesses is not consistent on that question, and it clearly appears that, in fact, he did not secure a new home in which the wife refused to live. See *McBrien v. McBrien,* 63 Pa. Superior Ct. 576, 579.

A careful review of this long record convinces us, as it did the master, who had the advantage of seeing and hearing the parties, and whose report is entitled to careful consideration (*Lyons v. Lyons,* 116 Pa. Superior Ct. 385, 176 A. 792) that the libellant failed to establish the charge that the respondent wilfully and maliciously deserted him for a period of two years. To the contrary, the libellant has persisted in living separate and apart from the respondent, without just cause. When he was making the alleged overtures to his wife to establish a new home, he was, in fact, living with another woman. There is also testimony that after the libellant and Rose Belardo ceased living together he cohabited with another woman. We are of the opinion that the primary cause of the libellant's withdrawing from the home was not due to living conditions, which, according to a number of witnesses, were not as bad as he depicted, or to the failure of the wife to discharge her marital duties, but rather to his desire to seek the companionship of other women.

We therefore conclude that the libel should be dismissed.

Decree of the learned court below is reversed, at appellee's costs.