Keller *v.* Keller, Appellant.

Argued March 4, 1947. Before RHODES, P. J., RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*Frank S. Weiss,* for appellant.

*George T. Robinson,* for appellee.

OPINION BY DITHRICH, J., April 21, 1947:

From the entry of a decree in divorce on the ground of desertion, respondent has brought this appeal. She does not deny having left her husband and having remained away from him for more than the statutory period of two years, but it is her contention that the separation was with the consent of her husband.

Testimony was taken before a master who recommended a decree. Voluminous exceptions were taken to the master's report but they were all overruled by the court below.

After an acquaintanceship of more than ten years and a lengthy courtship, the parties were married November 21, 1938. Immediately following the marriage, they went to live on a farm in Stroud Township, Monroe County, Pennsylvania, with libellant's aged father and his three unmarried sisters. Two of them had outside employment, the third staying at home and keeping house for the other members of the family. Respondent had visited the home many times during the ten years before her marriage and was thoroughly familiar with the conditions under which she would be expected to live following her marriage to libellant. She had been married once before and has a son born of the former marriage. She knew that the libellant was barely able to grub a living out of the farm—he having told her that his cash income never amounted to more than $180 a year. This, no doubt, accounts for his alleged penuriousness with her, but it was a fact of which she was wholly cognizant when she entered into the marriage contract.

Differences having arisen between respondent and her sisters-in-law, she and her husband moved into quarters in the farm house entirely separate and apart from the other members of the family. It was a double house, each half being separate from the other. This did not seem to improve conditions any so far as respondent was concerned; and following a separation of upwards of three months in the Spring of 1940, when respondent

was under medical care in Philadelphia, she finally left libellant December 4, 1941. The circumstances of her leaving clearly indicate that it was her intention not to return to the farm. She testified that arrangements had been made for her son to take her to Philadelphia for medical care and treatment and to secure a sacroiliac belt. She was asked by her attorney, T. 54: "Q. Answer this question carefully, Mrs. Keller. When you and your husband discussed your going away for the belt, was there an understanding between you and your husband that you would come back? A. He had always said that he would provide a place for me as soon as his father died, so of course I believed that." She had previously testified that her husband had told her that he would "clear out" as soon as his father died. But when on December 13, 1942, more than a year after the final separation, she wrote her husband expressing regret at his father's passing, she made no offer to return to him. Nor did she ever offer to return to him.

When she left she took all her personal belongings and the kitchen set. They were all loaded on a truck. She testified that the kitchen set was sold so she ". . . would have some money to go along with." She testified that her husband came in from the field shortly before noon when she was about ready to leave and that he said it was alright for her to go. She offered in evidence an affidavit of a woman named Ace who swore that she heard libellant ". . . state that it was alright for [respondent] to go, giving his consent for her to leave, *making it consentable for separation rather than a wilful or a malicious desertion.*" (Emphasis supplied.)

In connection with the affidavit there was offered in evidence a sworn statement by Mrs. Ace's physician stating that he believed ". . . it might be fatal if she tried to testify . . ." Both offers were objected to and the objections were sustained. Appellant urges upon us that "The main question in this action is answered by the affidavit of Mrs. Mary Ace . . ." and since she was not

physically able to testify, her affidavit accompanied by the sworn statement of her physician should have been admitted in evidence. Both writings were clearly inadmissible. See *Ulrich's Case*, 267 Pa. 233, 238, 109 A. 922.

Since this case turns largely on the credibility of the parties and their witnesses—testimony of respondent being without corroboration other than medical testimony as to her physical condition—the master's findings upon credibility and his judgment upon that vital factor are entitled to the fullest consideration. *Smith v. Smith*, 157 Pa. Superior Ct. 582, 43 A. 2d 371. In the opinion of the lower court ". . . the master was a respected member of the bar with many years of experience and his findings of fact should be given very serious consideration."

Upon an independent review of the testimony we are convinced that the conclusions reached by the master and the court below should be sustained. There having been a separation for the statutory period, the burden was on respondent to prove that it was with the consent of libellant. *Bates v. Bates*, 153 Pa. Superior Ct. 133, 33 A. 2d 281. This burden she has failed to meet. The most that could be said in support of her contention that libellant had consented to the separation is as stated in *Westfall v. Westfall*, 148 Pa. Superior Ct. 477, 480, 25 A. 2d 614: "His silence indicated not consent, which implies volition, but passive submission to an unhappy misfortune over which he had no control. If he consented to anything, it was to nothing more than a temporary separation. [citing cases]"

We have not failed to give consideration to the fact that respondent had obtained a nonsupport order against libellant, but this would not prevent him from securing a divorce on the ground of desertion upon proper cause shown. *Strathern v. Strathern*, 118 Pa. Superior Ct. 479, 179 A. 915; *D'Alfonso v. D'Alfonso*, 138 Pa. Superior Ct. 378, 10 A. 2d 808.

Decree affirmed.

DISSENTING OPINION BY RHODES, P. J.:

Respondent may not have produced sufficient facts to warrant a divorce from libellant, but his attitude toward her was reprehensible, and life with him and his family was impossible for her.

I dissent, however, because I am convinced by the record that libellant consented to the separation, if he did not actually encourage it. Obviously respondent was not wanted on the farm by libellant's sisters who lived there and who controlled and dominated him.

The decree should be reversed, and the libel dismissed.