Daubert v. Daubert, Appellant.

Argued December 10, 1931.

Before

Trexler, P. J., Keller, Linn, Gawthrop, Cunning-
ham, Baldrige and Stadtfeld, JJ.

*Ralph M. Bashore,* for appellant.

*Roscoe R. Koch,* and with him *Cyrus M. Palmer* and
*Edgar Downey,* for appellee.

Opinion by Trexler, P. J., March 5, 1932:

This is a suit in divorce by the husband, the grounds
being desertion. The parties were married in Sep-
tember, 1916, and on the 13th day of June, 1927, the
wife left their common domicile and her absence has
continued for more than two years. The master recom-
mended that the libel be dismissed on the grounds that
although there was not sufficient cause to justify the
wife's leaving, the separation was consentable. The
lower court did not take this view, but granted the
divorce.

The wife states that she was forced to leave, that
her husband put her in an apartment with four rooms
and bath which was all cluttered up and that there
was no money to fix it up. There were rats in the
house and on one occasion there was one ran over
her arm.

She states that their married life was such as is

usually lived by people in that state and they got along all right until a Miss Bostock appeared on the scene. This rift in their marital life was occasioned by the fact that the wife wanted to go to the circus and she asked her husband to take her as was his custom, but he refused, saying he could not afford it and she stayed at home. A few days later she found out that he had taken Miss Bostock and when she remonstrated with him, he asked her what she was going to do about it. He told his wife that he was tired of her and did not want her, that she did not need to be his wife and he was going out in congenial company and if he found out he could not behave himself, he would marry the girl. He declared he would not eat any food she prepared, he did not want to be poisoned. She states, "I never threatened to poison him and never had any such idea." "When he returned home that night he advised me to separate, to give a separation and he wanted a boy and a girl and I would not accede to this and we dropped the matter for a while." He, on more than one occasion, had asked her to separate from him.

After the Bostock affair, he did not come home for the noon meal. On one occasion the daughter disobeyed the mother by going out in wintry weather when there was snow on the ground without putting on her rubbers and she took the daughter and "gave her a crack across the shoulder." The girl cried and the husband saw her strike her and came in the house and pushed the wife back by the chiffonier, struck her in the face, marked her face and gave her a blue eye. She arrested him and the matter was settled before the squire and they went back to live together. This was in 1927.

After this, they continued to live together, but things did not go as well as they should; he never ate with her and on many occasions struck her by giving her a push that sent her flying. They were forced to get out of their dwelling at that time by reason of the fact

that the rent was not paid. He told her that she would have to get on a farm, but evidently to annoy her, he gave her no information as to the location of the place. He made no secret of his going with Miss Bostock and referred to her as his affinity. He used to pass the wife with Miss Bostock in the machine and ignore her. Lots of times she saw them together and he would never stop and pick her up. He never gave her any pleasure with his machine, he had told her long ago that he would not go out with her. She claims that he was niggardly in providing for her and that she has had but three dresses that he provided for her since they were married. She characterized his treatment of her as being worse than of a dog and that when she left him she was in the "form of a collapse and breaking down." We might say in passing, that there is no allegation on the part of the wife that there was any criminal intimacy between Miss Bostock and the libellant.

It is very evident that these people were tired of each other, that the husband had no affection for the wife and his course of conduct lends credence to her narrative that he wanted her to leave him and that the separation was by consent.

On the day on which the desertion is alleged to have taken place, she had a conversation with him, he was taking away his daughter as usual which was contrary to her wishes and they had a quarrel. He told her to separate and take it to court and see what she would get.

We are all of the opinion that taking all the testimony in the case, the separation was consentable. His efforts to get his wife back were apparently not made in good faith. She says that his inquiry was all directed to getting the children. She refused to live in the house where there was no light except a gasoline lantern and he made no offer to her to remedy the defect. If he had been earnest in his desire to have

her come back, he would have offered some inducement by promising to make the home a little more comfortable than it was. The master was right in concluding that the efforts to get her back were not made in good faith.

Her narrative, of course, was contradicted very largely by him, but, as stated before, taking all the circumstances in the case, we believe that he purposely treated his wife in such a manner as would naturally lead her to leave him and that when she did leave him he consented to her going, and in fact suggested it.

The decree of the lower court is reversed, the appellee to pay the costs.