## Wilhelm, Appellant, *v.* Wilhelm.

Argued December 16, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*E. LeRoy Van Roden,* with him *Ralph L. Lindenmuth,* for appellant.

*Robert W. Beatty,* for appellee.

OPINION BY JAMES, J., March 4, 1938:

On June 9, 1936, libellant filed his libel in divorce, alleging cruel and barbarous treatment, indignities to the person and wilful and malicious desertion, as of June 22, 1934. The libel was referred to a master, who filed a report finding that the causes of cruelty and indignities had not been sustained, but recommended that a decree be granted on the ground of desertion. Exceptions filed to the report were sustained by the court of common pleas, and from the decree, dismissing the libel, this appeal was taken.

Libellant, aged 35 years and respondent aged 40 at the date of the first hearing, were married in Philadelphia on January 30, 1926, and lived together in Philadelphia and Upper Darby until November 30, 1930, when libellant left the home. In December, 1930, the Court of Quarter Sessions of Delaware County entered an order of support of $7 per week against libellant. The parties did not meet again until March, 1931. In March, 1931, libellant called on respondent at her home in an effort to reduce the support order. They spent several nights together at respondent's and one night at libellant's home. The agreed to live together at 1410 Chestnut Street, Upper Darby, and a few days later libellant wrote to respondent stating that at any time it was convenient she should come to live with him at the above address. Respondent replied that she had turned the letter over to her lawyer. Shortly afterwards, libellant was placed in jail for failure to comply with the support order.

In March, 1931 libellant instituted divorce proceedings on the ground of cruelty and indignities. Upon

petition of libellant, an order was made discontinuing this libel.

Sometime in the spring of 1932, libellant talked to respondent concerning her return, discussed their resumption of marital relations, and the wife agreed to return. They interviewed respondent's attorney, who was instructed to suspend the court order for one year. A few days later, they quarreled, and, according to libellant, he was told to leave her home and never come back. Libellant was again arrested and the support order reinstated. From the spring of 1932 until July, 1934, they saw each other on one occasion, and that was in court. On July 10, 1934, libellant wrote the respondent the following letter:

"Keystone Telephone Exchange,
9th and Main Sts.,
Darby, Pa.
July 10, 1934,

Dear Evelyn,

It seems to me that both of us are making mistakes which are resulting in a terrible waste of both our lives.

Although my previous invitations to you to live together as man and wife have been refused by you, and although you have not seemed to understand that I was sincere in making the offers, I have been thinking that a great many misunderstandings could have been avoided and that if both you and I will try to reason things out sensibly and not look for double meanings in words that are said and statements that are made, we could get along together.

It would be very much more satisfactory to see you personally and discuss the matter and reach a decision; and if you are willing to see me, I shall be very glad to do so at any time and place you will suggest.

However, I am writing this letter as the best means I have to convey my thoughts to you at this time, and the purpose is to say that I am entirely willing that you and I should live together as man and wife, and you

are welcome to come and live with me at my present address, and I am willing to secure a home, whether it be a small house or apartment, provided, of course, the same is within my means in accordance with what I earn; and I am making this as a definite offer to you to come back with me again so that we can live together as man and wife. I am willing to furnish a home which will be comfortable, but, of course, it must be one that I can afford to maintain without running into debt.

Will you please consider this a sincere offer on my part, expressed as clearly as I can in a letter, that I am willing to come with you or have you come with me and live together, and whatever other details may be necessary to be worked out can be done by both of us sitting down like two sensible people and talking the same over.

Please let me hear from you very soon as to your attitude at this time, as I shall be interested in knowing what you will wish to do.

Sincerely,
Robert R. Wilhelm."

The reply of respondent to this letter is as follows:
"July 16, 1934.

Dear Bob,

I have your registered letter of July 10th and the contents are amazingly surprising since one month ago you consulted Alice as to whether she thought I would be amicable towards getting a divorce so that you and Mrs. Reibold could be married.

I never refused to cooperate with you towards getting together again even when your offers proved to be insincere. Your intentions at the last reconciliation were to live with me long enough to get out of the jurisdiction of the Media Courts, then leave again.

Your attitude, both before you left our apartment at Stonehurst Hills and on several occasions since then, makes it impossible for me to trust you. I'm sorry.

Sincerely,     Evelyn."

From the findings of the master that the charges of cruelty and indignities had not been sustained, to which no exceptions were taken it must be assumed that libellant was not justified in separating from his wife on November 30, 1930. From this premise, to establish that the subsequent conduct of the respondent constituted wilful and malicious desertion, the burden rests upon libellant to adduce clear and satisfactory evidence of the good faith of his offer to resume the marital relation. On both occasions that libellant desired reconciliation, respondent apparently accepted his offers as being sincere, as she agreed to a suspension of the court order. Conceding that she was not justified in her abrupt refusal to continue further discussions of her return to live with him, it was rather unusual, after a complete severance of all relations, and his complete silence and indifference for two years, to attempt a reconciliation by means of the letter of July 10, 1934. There are circumstances about the letter of reconciliation which belie its seeming frankness. The letter is quite formal and studied in its manner and is hedged with careful qualifications. It was sent by registered mail and a copy of it retained by the libellant. These circumstances cast a serious doubt on libellant's sincerity and give rise to a suspicion that the letter was sent for purely evidential purposes. An offer to resume the marital status must be made in good faith. In *Gordon v. Gordon*, 208 Pa. 186, 57 A. 525, it was said: "To bar the running of the term against the offending party, an offer of reconciliation or an offer to return to the injured party must be made in good faith with the desire that it be accepted and with the intention that if the reconciliation is effected the derelict party will honestly perform his whole duty as husband towards the one whom he deserted. Such an offer must to demand a decree of divorce. If, however, the offer

to resume marital relations is not made in good faith, and with the intention to live in the relation of husband and wife, but with the view of defeating a divorce, or for any other dishonest purpose, the injured party may decline to accept it without being deprived of the right to procure a divorce after the expiration of two years from the date of the desertion." This rule applies not only to the party defending against the divorce, but also to a party seeking a divorce who attempts to establish his case by first making an offer of reconciliation. Whether the offer was made in sincerity and with a bona fide intention to perform the marital duties is a question for the court when the case is tried without a jury: *McClurg's Appeal*, 66 Pa. 366; *Gordon v. Gordon*, supra. Moreover, whatever weight may be given libellant's letter is balanced by the respondent's reply in which she frankly states her reasons for disbelieving the sincerity of his offer of reconciliation. Reading the record as a whole, it is apparent that respondent did not trust libellant. In her reply she gave a specific reason why she did not believe him, yet he never made any effort to remove her doubts. This letter was the only contact libellant had with his wife over a period of four years prior to the filing of the libel.

In order to justify the granting of a divorce, the libellant must establish his case by clear and satisfactory evidence: *Lomax v. Lomax*, 87 Pa. Superior Ct. 543; *Reinhardt v. Reinhardt*, 111 Pa. Superior Ct. 191, 169 A. 408; *Wagner v. Wagner*, 112 Pa. Superior Ct. 485, 171 A. 419. Viewed in this light, we are of the opinion that the record does not establish such clear and satisfactory proof as warrants us in finding that the refusal to accept the offer of July 10, 1934, constituted a wilful and malicious desertion.

Decree affirmed.