### Peters, Appellant, v. Peters.

Argued November 15, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, RHODES and HIRT, JJ.

*William T. Connor*, with him *John R. K. Scott* and *Hardie Scott*, for appellant.

*John F. E. Hippel*, of *Edmonds, Obermayer & Rebmann*, with him *Desmond J. McTighe*, of *Fox & McTighe*, for appellee.

OPINION BY STADTFELD, J., January 30, 1940:

The libellant applied for a divorce in the Court of Common Pleas No. 3 of Philadelphia County on the

ground of wilful and malicious desertion alleged to have taken place on or about June 12, 1935.

An answer having been filed to the libel, the case was referred to Maxwell L. Davis, Esq., as master, who, after hearing testimony, filed his report recommending the libel be dismissed. Exceptions were filed to the report of the master, argued and dismissed in a per curiam opinion. The libel was dismissed, and an exception to the court's action in dismissing the libel, allowed.

On June 5, 1901, libellant and respondent were married at Benton Harbor, Michigan. They lived in and about Chicago, Ill., from 1901 until 1916, when they moved to Glenside, Pa., where they lived together until September 13, 1933. On that date libellant left his wife and went to live at different hotels in Philadelphia, until December 9, 1933, when he moved to 237 South 7th Street, Philadelphia where he has since resided. The respondent still resides at their former home at 212 Rosemore Avenue, Glenside, Pa.

Libellant was born in Norway and respondent in Germany. At the time of the hearings, he was fifty-nine years of age, and she was sixty-four years of age. He is superintendent of the Photo-Type Engraving Company of Philadelphia and earns $100 weekly. She is unemployed and has been a housewife since their marriage. Their one child, Gertrude, who was born in 1905, died in 1926.

On September 13, 1933, libellant left his wife. On November 3, 1933, he filed a libel in divorce on the ground of indignities, in the Court of Common Pleas of Montgomery County, and on May 10, 1935, the court en banc dismissed his libel. On June 10, 1935, she issued a warrant for his arrest in Montgomery County for non-support. On June 5th, 1933, he went to his wife's home in Glenside. He states that the purpose of this trip was to effect a reconciliation, so that he could return to their former home. The evidence is

conflicting as to the conversation which took place at that time, but at all events, libellant received a telephone call a few days later, advising him that his wife did not wish him to return.

He testified that he again called to see the respondent at her home on June 12, 1935 and asked her to live with him at Philadelphia, but that she refused to leave her home.

On June 17, 1935, libellant sent respondent the following registered letter: "Philadelphia, Pa. June 17, 1935. Dear Hattie: I am sorry I could not convince you on Saturday that the best way for both of us is for you to come and live with me at my Philadelphia home (236 S. 7th Street). We will have two floors consisting of five rooms and bath furnished. I am sure you can make yourself comfortable there for I have been comfortable in the same place for the last eighteen months. It may not be the best in the world but it is the best I can afford at this time. Think it over and let me know when you are coming. I can have it ready for you on a day's notice. Trusting you will see it the way I do and come live with me again. Sigurd."

On June 22, 1935, she answered his letter as follows: "Glenside, Pa. June 22, 1935. Mr. Sigurd Peters, 236 S. 7th Street, Philadelphia, Pa. Dear Sigurd: In answer to your letter of June 17th, I do not feel that, in view of your treatment of me in the past and your present attitude towards me, anything but great unhappiness would result for both of us by me coming to Philadelphia. It is not a question of physical comfort with me. It is simply that your actions and treatment of me have rendered life with you intolerable. Yours very truly, Hattie."

After this exchange of letters, libellant never again attempted to communicate with respondent, and on March 5, 1936, less than nine months later, he executed the present libel in divorce, which was filed on March 27, 1936, at Philadelphia County, alleging a wilful and

malicious desertion on the part of his wife on June 12, 1935.

Appellant's entire case is based upon his offer to resume the marital status in the conversations held by him with his wife and upon the exchange of correspondence contained in their letters of June 17th and June 22, 1935.

In order for the appellant to prevail in this proceeding, he must meet the burden of proving that his offer to return was made in good faith and that his wife was not justified in refusing it: *McClurg's Appeal,* 66 Pa. 366; *Gordon v. Gordon,* 208 Pa. 186, 57 A. 525; *Walsh v. Walsh,* 117 Pa. Superior Ct. 579, 178 A. 399; *Truitt v. Truitt,* 130 Pa. Superior Ct. 79, 197 A. 152.

The libellant testified that, after his divorce proceedings were dismissed in Montgomery County, he concluded that he would attempt a reconciliation, and therefore went to the respondent's home on June 5, 1935, and offered to return. He testified that she stated he could come back only if he paid $25 for his room and garage and that she would not prepare meals for him. She then refused to allow him to return, but he persuaded her to agree that he should come back in two days unless he heard from her to the contrary. After he packed his things, and notified his landlady that he was leaving, he received a telephone call that she was not ready to receive him. He further testified that on June 12, 1935, he again visited her, first offered to come back, and after she refused, he asked her to come live with him in Philadelphia, at 236 South 7th Street, where he had already made arrangements for that purpose. She refused to leave her home in Glenside. Then he mailed the registered letter, dated June 17, 1935, to which he received the reply dated June 22, 1935. He made no further attempts in any manner whatsoever towards reconciliation. The respondent, although her dates differed slightly from those given by her husband,

testified that when he visited her, after the divorce pro-
ceedings were dismissed in Montgomery County, he said
that he desired to return in order to reduce his ex-
penses, and that he did not intend to give up his lady-
friend. She denied that he stated he wanted to come
back to her to abide by the court's decision that he was
not entitled to a divorce. She also testified that he said
that he would not be the same husband to her; that he
would not be home weekends, because he would be out
with the boys. She then agreed that he should come
home in a few days and bring his clothes. She called
him on the telephone the following Sunday morning
and told him that she decided he should not come back
on Monday as she wanted a few days to think about
the matter. She also testified that he made the second
visit, at which time he requested her to live with him
in Philadelphia. She was surprised, doubted his sin-
cerity and questioned him as to why he asked her to
leave their own home and live in a rooming house in
Philadelphia. He said nothing further, and although
she asked him to stay for lunch, he left. She testified
that he again imposed the same conditions under which
they were to live together in Philadelphia, that he
would go out with his lady friends, go out weekends
with the boys, and that he would not be home during
the week as he would be out on business trips. She also
testified that their marital difficulties were due to his
interest in a widow, Mrs. Florence Shearer.

The libellant testified at great length concerning the
nagging, argumentative and quarrelsome manner of the
respondent, which the wife categorically denied. He
said that shortly after their marriage, she became dis-
satisfied with what he did, found fault with everything,
insulted his friends, and made slurring remarks about
them, mistreated his relatives, and continually quar-
reled with him and nagged him to such an extent that

conditions became so intolerable that he left her on September 13, 1933.

The decree of the Montgomery Court, dismissing the former libel based on indignities, is a conclusive adjudication that the wife had not been guilty of offering indignities to the husband: *Sperling v. Sperling,* 82 Pa. Superior Ct. 308, 310.

Since the libellant was not justified in separating from his wife, to establish that her subsequent conduct in refusing the offer of reconciliation constituted wilful and malicious desertion, the burden rests upon him to adduce clear and satisfactory evidence of the good faith of his offer to resume the marital relation. In determining whether the efforts at reconciliation by the husband were sincere and in good faith, it is important to consider the surrounding circumstances.

After the husband left his wife on September 13, 1933, he came to her for the first time on June 5, 1935, and suggested that he wanted to return to their home, in spite of the fact that he felt blameless for their marital difficulties, and was of the opinion that his wife's attitude towards him did not change. This occurred about a month after the dismissal of the divorce proceedings on the grounds of indignities, which were started November 3, 1933.

The letter dated June 17, 1935, was the only letter he sent her since the separation, wherein he asked her to come to Philadelphia to live with him, but said nothing about his willingness to come back to their own home in Glenside, where they had lived for about twenty years. This letter was quite formal and was sent by registered mail, and although written in longhand, a copy was made and retained. It was written after a warrant for his arrest was issued and he offered it in evidence at the hearing for the purpose of inducing the court to release him of a support order.

It would be difficult to believe that libellant intended

or expected respondent to accept the offer in his letter. A man who has just been unsuccessful in a bitterly fought divorce proceeding, can hardly entertain high hopes of inducing his estranged wife to resume cohabitation by embodying his offer in a formal, registered letter.

A somewhat similar situation was presented in the case of *Wilhelm v. Wilhelm,* 130 Pa. Superior Ct. 143, 197 A. 496, where this court said, through JAMES, J., on p. 147: "Conceding that she was not justified in her abrupt refusal to continue further discussions of her return to live with him, it was rather unusual, after a complete severance of all relations, and his complete silence and indifference for two years, to attempt a reconciliation by means of the letter of July 10, 1934. There are circumstances about the letter of reconciliation which belie its seeming frankness. The letter is quite formal and studied in its manner and is hedged with careful qualifications. *It was sent by registered mail and a copy of it retained by the libellant.* These circumstances cast a serious doubt on libellant's sincerity and give rise to a suspicion that the letter was sent for purely evidential purposes." (Italics supplied).

And in *Gordon v. Gordon,* supra, the court said, at p. 187; "The statutory requisite for a divorce on the ground of desertion is, as suggested by the learned counsel for the appellant, a 'wilful and malicious desertion and absence from the habitation of the wife or husband, without reasonable cause, for and during the term and space of two years.' No divorce for this cause will be granted for a desertion that is not without reasonable cause and has not existed for at least the space of two years. While this is true, it is well settled that to bar the running of the term against the offending party, *an offer of reconciliation or an offer to return to the injured party must be made in good faith with the desire that it be accepted and with the*

*intention that if the reconciliation is effected the derelict party will honestly perform his whole duty as husband toward the one whom he deserted. ......".* (Italics supplied). To same effect see *Walsh v. Walsh,* supra; *Truitt v. Truitt,* supra.

There is in the case, however, one factor which does not appear in the exchange of correspondence, but the presence of which libellant knew would act as a bar to the acceptance of his offer—his attention to Mrs. Florence Shearer.

One of the libellant's business associates was Wilson Shearer, husband of Florence Shearer. The Shearers and the Peters had never been particularly friendly, and although the business association of the men covered a period of seventeen years, there was only one occasion (in 1915 or 1916) when the two families had visited socially.

In the fall of 1932, Mr. Shearer developed a fatal, but lingering, malady and Mr. Peters was wont thereafter to call upon him of evenings, and to take Mrs. Shearer for automobile rides as a relaxation from her nursing duties. This practice continued until Mr. Shearer's death on July 19, 1933.

On August 16, 1933, appellant received a telegram from Wisconsin that his father had died and was to be buried on August 19, 1933. The appellee was then staying in Atlantic City, and appellant telephoned her that he was going to the funeral. This death was most opportune, because appellant was obliged to go to Chicago, about ninety miles from his father's residence, to attend a convention which was to open the evening of the day his father was to be buried, August 19, 1933. He did not mention that Mrs. Shearer was going to accompany him in his automobile to the World's Fair in Chicago. The first night, they spent in a hotel at Gettysburg, Pa.; the second, in a hotel at Mansfield, Ohio. He never did get to his father's funeral. In

Chicago, they both stopped at the Hotel Stevens for one week, but apparently in different rooms. Although he was kept very busy, appellant did not entirely neglect to keep his wife posted of his actions. He wrote her a letter dated August 23, 1933, in which he described the wonders of the World's Fair and his hotel accommodations. In the same letter, he told of his plans for the pleasant return trip by night boat from Detroit to Buffalo, as follows: "I managed to get a reservation on the boat for Saturday by booking up with one of the boys from New York we,had to take a Parlor with twin beds and bath like you and I had, it cost a little but will be worth it when you see the 'bunks the others have," and wound up with this remarkable expression of affection: "I have to write a lot of cards this morning so I will close with lots of love for your dear self." It should be noted that he overlooked mentioning the fact that Mrs. Shearer was accompanying him. Later, he made a trip with Mrs. Shearer to New York in her automobile and since the summer of 1933, he has seen her frequently and has taken her to dinner at least twice each month. Mrs. Shearer is nineteen years younger than Mrs. Peters. Shortly after his return from New York, Mr. Peters left his home (September 13, 1933) and on November 3, 1933, began his unsuccessful suit for divorce in Montgomery County, alleging as the cause, indignities to his person.

Until the Shearer episode, the ,parties had lived together from the date of their marriage, June 5, 1901, until September 13, 1933, a period of more than thirty-two years. When appellant imposed the conditions he did as a basis for his return to a common domicile, we can readily understand the reluctance of appellee to accept his offer. That her refusal was justified is fully supported by *Kern v. Kern,* 93 Pa. Superior Ct. 500; *Struble v. Struble,* 98 Pa.,Superior Ct. 230; *Daubert v. Daubert,* 104 Pa. Superior Ct. 8, 159 A. 81.

On appeal from a decree dismissing a libel in divorce, it is the duty of the appellate court to examine the evidence de novo and determine whether the court below reached a correct conclusion, and the burden is on the libellant to prove by a preponderance of evidence, a wilful and malicious desertion, without reasonable cause on the part of the respondent: *Walsh v. Walsh,* supra; *Wilhelm v. Wilhelm,* supra.

After a careful examination of the entire record, we have come to the same conclusion as that of the master and the learned court below.

The assignments of error are overruled and the decree affirmed.