## Stephens, Appellant, v. Stephens.

Argued September 30, 1943. Before KELLER, P. J.,

BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ. (STADT-FELD and RENO, JJ., absent).

*Michael A. Foley,* for appellant.

*Bryan A. Hermes,* for appellee.

OPINION BY KELLER, P. J., October 29, 1943:

This appellant sought a divorce from his wife, and in his libel, filed August 11, 1941, averred that she wilfully and maliciously and without reasonable cause deserted him and absented herself from his habitation on November 18, 1937 and continued in such desertion from that date to the filing of the libel.

The master recommended that the divorce be granted.

Exceptions to his report, filed by the respondent, were sustained by the court, and the libel was dismissed.

The parties had not lived together since June 11, 1930, when he withdrew from their home in Prospect Park, Delaware County, title to which was in his name, although the respondent and libellant's father had contributed to the purchase and cost of construction. On August 11, 1930 he brought an action for divorce against her on the grounds of cruel and barbarous treatment and indignities to the person, which resulted in the dismissal of the libel. In 1932 he secured a reduction of the support order, entered against him in

Delaware County, from $12 to $10 per week; and the next year unsuccessfully attempted to have the order vacated. In June 1936 he tried, unsuccessfully, through his counsel, to induce his wife to bring an action for absolute divorce against him, for which he agreed to pay all costs. In October 1936 he started a proceeding to compel the respondent to remove from the home in which she had lived continuously since their separation, but discontinued it in December of that year.

On January 20, 1937 he leased, by the week, part of a furnished apartment[1] at 5122 Haverford Avenue, Philadelphia, for which he paid $7 a week. He did not go to see his wife and ask her to come to live with him there, but on January 23, 1937 wrote her a coldly formal letter stating that he would like to give their "matrimonial venture another trial", and asking her to share the apartment with him. He requested her to let him have her decision at once. He kept a copy of the letter, and on January 30, not having heard from her, he wrote her again, enclosing a copy and asked for a reply by return mail, stating: "You realize, of course, I am paying rent for this apartment and I wish you would let me know promptly what you intend to do, because if you do not decide to come, I do not wish to keep it."

On February 4, 1937, she wrote him as follows:

"Dear Billy:

"Your surprising yet, nevertheless, welcome letter has just been received by me.

"Nothing would please me more than for us to live happily together as a husband and wife should, and with that thought in mind. I would be glad to see you

---

[1] The apartment was on the second floor and contained a living room, two bedrooms, a bathroom and kitchen. One of the bedrooms was reserved by the lessor and his wife for their own use, and they also reserved the right to share with libellant the use of the single bathroom.

at our home in Prospect Park or at any other place that you might designate in order that we can talk the matter over.

Lovingly,

Peggy."

He replied on February 6, inter alia, as follows:

"I do not see the necessity of calling at the Prospect Park house or any other designated place to 'talk the matter over' as there has already been enough 'talk'; nor do I see the necessity of a continued correspondence. I have been awaiting your arrival in this apartment since the date. of my first letter, Saturday, January 23rd, and all I want to know is are you or are you not coming? ...... I again request that you please let me know what you are going to do."

To this, after visiting the "apartment", she replied to him, as follows:

"Dear Billy:

"I received your letter dated February 6th, and I am sorry that you take the position that you will not meet me in order that we can discuss together the question of our again living together. You can appreciate how I felt when I received your first letter dated January 23rd, 1937 and advising me that you had rented an apartment at 5122 Haverford Avenue, which you wanted me to share with you, especially in view of the fact that our home is in Prospect Park and you left me from such place nearly seven years ago. In addition, since your desertion you have brought various legal proceedings against me such as the divorce, and retaining lawyers within the last several months to attempt to eject me from our home. Surely, you must agree with me that there are many things to talk over. I want you to believe me when I again state that nothing would make me happier than the two of us living happily together, and when I requested a conference so that we could talk the matter over, I was not influenced

by anybody. I agree with you that the both of us should not be influenced by any relatives whatsoever.

"In the hope that I might see you, and as you would not consent to meet me, I went to the apartment at 5122 Haverford Avenue on last Tuesday evening. Surely Billy, you would not want me to live in such a place, as it is not such as either you or I have been accustomed to. Billy, won't you be honest with me at least this time?

"I agree with you that there is no necessity of a continued correspondence, but there is a real necessity of discussing matters of importance to both of us. I know that until recently you have been out with other women. Would you give these women up if I come to live with you? Would you want me to continue working, etc. There are so many things that should be discussed between us if we are to live happily together that I cannot see that any harm would be done if you would meet me and discuss them.

"I do not want to judge too harshly and want to give you the benefit of every doubt, but Billy are you not writing me these letters to trick and fool me. Please be honest with yourself and with me.

Lovingly,

Peggy."

Although he professed to be living in the apartment, on her visit there she found it dirty, ill-furnished, and only the following personal property of the libellant: a zipper bag on the floor of the bedroom, a raincoat on the clothes-tree, a coat and several neckties in the bedroom closet, a magazine addressed to 6038 Columbia Avenue, where he resided prior and subsequent to the leasing of the apartment, and a dirty towel, a wash cloth and a piece of soap in the bathroom. There were no kitchen utensils, no linens, no towels. It was located over a grocery store in a commercial district. He was then employed by the Pennsylvania Railroad Company at a salary of $199 a month.

We shall not discuss the contents of the eleven letters which he subsequently wrote her or her replies to them. Most, if not all, of his letters to her were sent by registered mail. They exhibit no real affection for her, no genuine desire on his part to resume the marital relation nor any intention to meet the wholly reasonable suggestions she made in order to satisfy herself of the sincerity of his offer. The burden of most of his letters was a demand for a categorical answer as to whether or not she would come to live with him at the apartment leased by him. She had reasonable grounds for thinking it might be only a scheme to get her to move out of the Prospect Park home, of which he had been trying to get possession, and she asked for some security evidencing his good faith. In view of her past experiences the request was not unreasonable.

At the only meeting between them—on March 31, 1937—he was cold and formal, did not kiss her or show any affection for her. His actions were not those of a man who really loved his wife and wanted her to live with him again, wiping the slate clean of past errors and mistakes, and anxious for a lasting reconciliation.

We shall not further discuss the matter. Judge ALESSANDRONI'S opinion presented the situation fully, fairly and clearly. We agree with his conclusion.

The question involved, as stated by the appellant, is, was libellant's offer asking that respondent return and live with him made in good faith?

Our review of the evidence in the case, considered in connection with the conduct of the libellant towards the respondent in the seven years immediately preceding the alleged desertion, convinces us that it was not.

For recent cases dealing with the good faith required of a spouse who seeks a reconciliation, following a separation brought about by him, see *Hyder v. Hyder,* 149 Pa. Superior Ct. 526, 530, 27 A. 2d 521; *Klaus v. Klaus,* 147 Pa. Superior Ct. 189, 192, 24 A. 2d 33; *Jones v.*

428

*Jones,* 144 Pa. Superior Ct. 372, 379, 380, 19 A. 2d 480; *Peters v. Peters,* 138 Pa. Superior Ct. 534, 540-542, 10 A. 2d 867; *Michell v. Michell,* 134 Pa. Superior Ct. 230, 237-240, 3 A. 2d 955; *Truitt v. Truitt,* 130 Pa. Superior Ct. 79, 82-84, 197 A. 152.

The assignments of error are overruled, and the decree. is affirmed at the costs of the appellant.