## Clark, Appellant, *v.* Clark.

Argued October 7, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Edward F. Hitchcock,* for appellant.

*John R. Graham,* for appellee.

OPINION BY RENO, J., November 12, 1952:

In this divorce proceeding for desertion the master recommended a decree.  Defendant-wife filed exceptions which were sustained by the court below and the complaint dismissed.  Plaintiff-husband appealed.

The complaint alleges desertion on May 31, 1949. The parties were married in 1917 and at the time of the master's hearing were both 56 years of age.  In 1923 they jointly purchased a home in Bryn Mawr, where they continued to reside until September 23, 1944, when plaintiff left his wife and four children. The underlying cause of their difficulties apparently was plaintiff's attentions to another woman.  Within three months after leaving he brought his divorce action on the ground of indignities.  The wife vigorously contested the suit which was subsequently dismissed. Since November 1945 he has been paying her $90 a month under a support order.

Plaintiff never returned to the home in Bryn Mawr nor did his wife hear from him until April 25, 1949, when he wrote her that he thought they had made a mistake and he would like to come home.  In the letter he protested his love for her but insisted all the children except Buss, their youngest child age 17, should leave the house.  At that time their eldest boy Edward, age 31, was in the armed forces; Nancy was married and together with her husband resided with defendant, as did the other daughter Peggy.  As a result of their correspondence the wife, at plaintiff's sug-

gestion, met him on May 6, 1949 at a drug store on 69th Street and at lunch in a nearby restaurant they discussed the possibility of a reconciliation. Plaintiff testified it was agreed that he should return to the Bryn Mawr home in one month and that Peggy could remain in the house if she "raised no trouble". On May 31, 1949, the desertion date alleged in the complaint, the parties met in the office of the county probation officer to apprise him of their proposed reconciliation and to have the support order rescinded. Plaintiff states it was then that his wife informed him she had changed her mind and did not wish a reconciliation nor did she want anything to do with him. There was no further attempt to effect a reconciliation and on August 23, 1951 the present action was instituted.

Defendant testified that at their meeting in the restaurant, her husband "jumped all over me" and "didn't say one kind word to me." He told her he would agree to return home on the following conditions: She was not to be sick any more; all the children except Buss were to leave the house; her relatives were not to visit them; and she was to have no spending money. Although denied by plaintiff, the wife's testimony was corroborated by the county probation officer who was called as a witness by *plaintiff,* and testified that the parties attended a meeting in his office on May 31, 1949, and after Mrs. Clark had related her version of the conditions, plaintiff grinned and said, "that was it", and "there they are", meaning the conditions attached to the offer. The probation officer was a disinterested witness, and Judge TOAL, who knew the character of his court officer, believed his testimony. Upon it he founded his conclusion "that the plaintiff acknowledged the conditions to be as she the defendant stated them." Our reading of all the testimony has brought us to the same conclusion.

Although the evidence[1] points to plaintiff's wilful desertion in 1944, and hence the offer of reconciliation made two years after that time came too late, *Ussler v. Ussler*, 158 Pa. Superior Ct. 215, 44 A. 2d 526, we shall not predicate the decision upon that ground. For, whether the parties separated by mutual agreement or he deserted her, the party who would resume marital relations carries the burden of proving by clear and convincing evidence that he made a bona fide offer of reconciliation. *Franks v. Franks*, 129 Pa. Superior Ct. 487, 196 A. 578; *Truitt v. Truitt*, 130 Pa. Superior Ct. 79, 197 A. 152; *Esenwein v. Esenwein*, 141 Pa. Superior Ct. 604, 15 A. 2d 735.

Reasonable conditions may be attached to an offer, but where it is coupled with demands that indicate that the offer was not made for the sincere purpose of re-establishing amicable and affectionate relations, it may be rejected with impunity. *Buys v. Buys*, 56 Pa. Superior Ct. 338 (the condition being that wife must assent to sexual relations, where there had been no intercourse for 15 years); *Cahill v. Cahill*, 91 Pa. Superior Ct. 147 (wife must treat his children, by former marriage, according to his ideas); *Doemling v. Doemling*, 118 Pa. Superior Ct. 426, 179 A. 813 (husband must send his children away, allow her brother to live with them, and permit her to be the boss); *Peters v. Peters*, 138 Pa. Superior Ct. 534, 10 A. 2d 867 (husband to continue going out with his lady friends); *Klaus v. Klaus*, 147 Pa. Superior Ct. 189, 24 A. 2d 33 (wife must apologize for her conduct, where she was blameless).

---

[1] Plaintiff's failure to secure a divorce for indignities is evidence that his separation from his wife was without legal or justifiable cause. *Esenwein v. Esenwein*, 141 Pa. Superior Ct. 604, 15 A. 2d 735; *Peters v. Peters*, 138 Pa. Superior Ct. 534, 10 A. 2d 867; *Wilhelm v. Wilhelm*, 130 Pa. Superior Ct. 143, 197 A. 496.

Our independent study of the testimony has produced the firm conviction that plaintiff's offer was not made in good faith. It was a mere tactical expedient, an effort to lay the foundation for a divorce for desertion after he had been defeated in an effort to secure a divorce for indignities and to nullify the support order. The conditions were unreasonable and harsh. How he could expect his wife to promise not to become ill or to do without spending money, passes all understanding. To demand that their children, who had remained with their mother during the years when he was living apart from them, without visiting them although he lived comparatively near them, be removed from the house posed a cruel dilemma, a deliberately planned design to break up the family or else a mere stratagem to convert *his* desertion into a desertion by *her*. Maybe a husband has a right to exclude his wife's relatives from their home[2] but a wife is not bound to yield to that term in an offer of reconciliation, absent proof that the relatives fomented the family disunity which caused the separation. On the whole, plaintiff's offer lacked the benign spirit of an honest invitation to resume peaceful matrimonial relations. *Scanga v. Scanga,* 167 Pa. Superior Ct. 133, 74 A. 2d 723.

Decree affirmed at appellant's costs.

---

[2] See 1 Freedman on Marriage and Divorce, §339.