## White *v.* White, Appellant.

142

Argued October 4, 1957. Before Rhodes, P. J., Hirt, Gunther, Wright, Woodside, and Ervin, JJ. (Watkins, J., absent).

reargument refused February 11, 1958.

*Jacob A. Raub, Jr.,* with him *Cletus C. Kilker,* for appellant.

*W. J. Krencewicz,* for appellee.

Opinion by Woodside, J., January 21, 1958:

This is an appeal from the entry of a decree of divorce in favor of the husband.

The parties were married in 1924. They lived together for 29 years, during which time they had eight children. After they separated in 1953, the husband brought an action of divorce in Schuylkill County charging indignities. He later amended his complaint to include the charge of desertion. The master recommended granting a divorce on the ground of desertion, but he was of the opinion that the evidence did not support the charges of indignities. After each party filed exceptions to those findings of the master which favored the other party, the court below concluded that the evidence supported both of the charges contained in the husband's complaint, and entered a decree of divorce. The wife appealed.

The husband was employed as a truck driver. On February 26, 1953, when he returned from work to the common domicile near Fountain Springs, Schuylkill County, his wife was not there. She never returned, and thereafter the parties never cohabited. For over a year the plaintiff kept the house in the same condition as it was when his wife left it. He then disposed of some of the furniture, but continued to live in the house.

It is clear that when his wife left their home she never intended to return. She went directly to Pottsville as a housekeeper, where she told her employer that she did not want her husband to find out where she was. Later she went to Easton in Northampton County. At the hearing she said, "If I was older and had some sense, like I have today, I would have never married my husband." She had often told him that when the children were old enough, she would leave him, and that once she did she would never have anything to do with him again. She said that she would not live out her life with him. She said that if she could ever get $300 together, she would get a divorce.

At the divorce hearing she testified that within the period of two years from the time she left her husband, she dated two different men regularly. She also testified that she would never return to her husband again. The evidence related in this paragraph establishes a desertion which was willful, and presumably malicious.

When plaintiff has established that the defendant left the matrimonial domicile and persisted in the separation for the required statutory period, the burden falls upon the defendant to prove a reasonable cause for her withdrawing from the matrimonial domicile. *Totino v. Totino,* 176 Pa. Superior Ct. 108, 112, 106 A. 2d 881 (1954); *Dougherty v. Dougherty,* 166 Pa. Superior Ct. 219, 221, 70 A. 2d 411 (1950). The reasonable cause which will justify her separation is only that which would entitle her to a divorce. *Grove's Appeal,* 37 Pa. 443, 447 (1860); *Howe v. Howe,* 16 Pa. Superior Ct. 193, 195 (1901); *Smith v. Smith,* 161 Pa. Superior Ct. 482, 484, 55 A. 2d 434 (1947); *Sfakianakis v. Sfakianakis,* 183 Pa. Superior Ct. 87, 91, 127 A. 2d 746 (1956).

She attempted to excuse her leaving the plaintiff on the grounds that "he was crazy", and that she was afraid of him. But she testified that she thought he was crazy for 18 years, and that she was in "constant fear of him for 28 years."

There is no doubt that for over a quarter of a century the marital life of the parties was stormy, and that at times the husband physically abused his wife. The household was filled with physical violence. The plaintiff is not entirely without blame for this, although the evidence establishes that the defendant baited and provoked most of his conduct toward her by her own unwarranted and malicious acts toward him. The plaintiff lacked culture and refinement. He

could not qualify as a gentleman; but the right to divorce is not limited to gentlemen.

In the light of the defendant's own conduct, to which we shall refer in discussing the charges of indignities the husband's acts were not sufficient to entitle her to a divorce from him. She was thus not justified in leaving her husband. *Rech v. Rech,* 176 Pa. Superior Ct. 401, 411, 107 A. 2d 601 (1954).

The evidence establishes a willful and malicious desertion persisted in for a period of more than two years.

The defendant obtained a support order against her husband in Northampton County about one year after the desertion, but such order does not prevent the husband from securing a divorce on the ground of desertion. *Keller v. Keller,* 160 Pa. Superior Ct. 480, 52 A. 2d 373 (1947); *Boyles v. Boyles,* 179 Pa. Superior Ct. 184, 195, 116 A. 2d 248 (1955).

The plaintiff filed this action July 7, 1953, within five months of the separation. The only ground for divorce alleged in the original complaint was indignities. In November of 1955 the plaintiff amended his complaint by adding the charge of desertion.

The defendant contends that filing an action for divorce from the defendant on the ground of indignities tolls the two year statutory period of desertion, or, at least, expresses the plaintiff's reluctance and unwillingness to have the defendant return to him and live with him, and is evidence of plaintiff's consent and encouragement to the defendant to separate from him.

For over a hundred years the legislature of this Commonwealth has expressly authorized the bringing of an action in divorce in cases of willful and malicious desertion at any time not less than six months after the separation: Section 17 of the Act of May 2, 1929, P. L. 1237, 23 PS §17 not affected by the Rules of Civil Procedure, see R. C. P. 1409(2); Act of April

26, 1850, P. L. 590, §5. Since the statute authorizes this, no adverse inference can be drawn from the mere filing of a divorce action prior to the expiration of the two years statutory period. This is true regardless of anything that might be inferred to the contrary from what was said in *Latour v. Latour*, 162 Pa. Superior Ct. 75, 56 A. 2d 332 (1948). See *D'Alfonso v. D'Alfonso*, 138 Pa. Superior Ct. 378, 10 A. 2d 808 (1940) and *Demczak v. Demczak*, 103 P.L.J. 267 affirmed in 179 Pa. Superior Ct. 75, 116 A. 2d 299 (1955).

In computing the statutory period necessary to support a divorce for desertion, the time of the voluntary separation of the *defendant* during the pendency of a divorce suit brought in good faith by *her* on the grounds of cruel and barbarous treatment or indignities to the person cannot be included by the *plaintiff* in the two year statutory period in an action of desertion brought by *him*. This has been the law since *Zeiler v. Zeiler*, 58 Pa. Superior Ct. 220 (1914), and has been followed subsequently: *Lowe v. Lowe*, 148 Pa. Superior Ct. 439, 450, 25 A. 2d 781 (1942); *Caplan v. Caplan*, 174 Pa. Superior Ct. 583, 585, 102 A. 2d 198 (1954).

The reasons for this rule are set forth in Freedman's Law of Marriage and Divorce in Pennsylvania (2nd edition), section 228 in the following language: "Were the spouse to incur the risk of a counter charge of desertion as the result of a separation and the commencement and prosecution in good faith of a suit for divorce, there would result, in many cases, a denial of an opportunity for prosecuting a well-founded and legally adequate cause for divorce. Public policy cannot compel the party who has suffered mistreatment to be put to the choice of continuing to bear the wrong, upon pain of committing a matrimonial offense in the

event the judgment of the court should find the wrong inadequate to sustain a suit." These reasons do not apply where the *plaintiff* in a desertion action includes in his complaint the ground of indignities.

It has become a common practice in Pennsylvania to file complaints in divorce containing charges of indignities *and* desertion after six months but within two years of the separation. An action in divorce charging indignities and cruelty filed within six months of the separation can be amended more than six months after the desertion to include the charge of desertion. *Quinn v. Quinn*, 125 Pa. Superior Ct. 359, 189 A. 705 (1937).

The bringing of an action charging indignities does, therefore, not preclude granting the divorce on the grounds of desertion. The time during the pendency of the action on the grounds of indignities can be included in computing the statutory period of desertion.

The court below reviewed the evidence on indignities in an exhaustive opinion. Our independent examination of the evidence leads us to the same conclusion reached by that court. We deem it unnecessary, particularly in consideration of our conclusion on the charge of desertion, to review in detail the evidence on indignities.

Judge STAUDENMEIER ably summarized it in the following language: "The testimony clearly indicates that defendant had no love or affection for her husband; that she held no respect for him; that she had no reverence for his personality; that she held him in such low esteem as to consider him mentally ill; that she threatened to poison him; that she took a shot at him with a revolver and was regretful of the fact she warned him and thereby made him move and thus missed him; that she continually, over the greatest por-

148

tion of their life together, accused him unjustly and without basis or sound reason of running around with other women, of immorality, of adulterous conduct; that she threatened him; that she tried to make him fear her; that she went to fortune tellers to be informed as to when he would die, and when he failed to die as forecast, she became angry and disappointed; that she accused him of immoral desires towards his daughter-in-law; that as a result of her conduct his health was impaired; that she arrested him many times and had him pay fines; that she baited him and purposely antagonized him in order to make him react harshly toward her; that she did by inference and by direction urge their children to disrespect him and to have nothing to do with their father; that she simply did not care for him, and indicated her desire to leave him many years before she actually did leave. him. Her lack of any affection for her husband stands out boldly in every word of her testimony, and her feelings are clearly portrayed in those of her children who testified in her behalf."

Decree affirmed.