Rhine *v.* Rhine, Appellant.

Submitted December 18, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Wm. Vincent Mullin,* for appellant.

*Colbert C. McClain,* for appellee.

OPINION BY WATKINS, J., April 13, 1960:

This is an appeal from the decree of the Court of Common Pleas of Philadelphia County granting a divorce in favor of Luther R. Rhine, the appellee-husband and against Hattie Rhine, the appellant-wife, on the ground of desertion.

The parties were married in Baltimore, Maryland on July 22, 1918. He is 62 and she is 65 years of age. There are two children of the marriage, a daughter, Anna Mae Rhoades, 38 years of age, and a son, Raymond Luther Rhine, 31, both married, with homes and families of their own. Both parties agree that the marriage was harmonious until the date of the alleged desertion which is stipulated by the parties to be September 19, 1941. At the time of the alleged desertion they lived at 3321 Ramona Avenue, Baltimore, Maryland, in a home which they were purchasing. At that time, the son lived with them and was then thirteen years of age. The husband is presently living at the Y.M.C.A., 1421 Arch Street, Philadelphia and is employed as a Sales Manager for W. T. Cowan Motor Freight, 1701 North Delaware Avenue, Philadelphia, Pa. The wife is not employed and continues to live at 3321 Ramona Avenue, Baltimore, Maryland.

The record story, according to the husband and his witnesses, is to the effect that, at the time of the disagreement, the husband was employed by the American Railway Express in Baltimore, Md. In June of 1941, he was offered a position with the same company in Coatesville, Pa., in a capacity which would represent a substantial promotion and which held out prospects of future advancement, not attainable in Baltimore. He told his wife of the offer and its inducements and that it would require his removal from Baltimore to Coatesville, Pa. From the outset the wife declined to consider moving and stated that she would not leave her home in Baltimore under any conditions.

He accepted the position at Coatesville in June, 1941. He stayed at the local Y.M.C.A. for a short time and then rented a room at 228 Fleetwood Avenue, adjacent to his work. He returned to Baltimore on the weekends to visit his family and on these visits he endeavored to persuade his wife to join him in Coatesville. She would visit him there, but remained steadfast in her refusal to leave Baltimore. In September of 1941 he engaged a room at 330 Fleetwood Avenue, Coatesville, and discussed with the landlady at that address, a plan to convert the upper floor of the premises into an apartment to accommodate himself, his wife and son. He showed these premises to his wife when she was in Coatesville on a visit and outlined his plan to set up an apartment, which, his testimony indicates, would have been ample and suitable for the family. She again told him she would not leave Baltimore and that she had no intention of moving to Coatesville.

On the following weekend the husband returned to Baltimore and again tried to persuade his wife to come with him. In his words, "I was determined to know what she intended to do. I had to have some reason for her not going to Coatesville. She said, 'Bud, I'll leave you before I move to Coatesville or any other City

than Baltimore, Maryland' ". It is the date of this conversation, September 19, 1941, which the husband fixes as the inception of the statutory period of desertion.

He continued to live and work in Coatesville until the spring of 1942 when he was transferred to Silver Spring, Maryland. This was not an advancement. His testimony indicates that the improvement in his employment status that he hoped for in his transfer to Coatesville did not materialize, and that its failure to materialize was his inability to establish his family home as a necessary condition for his permanent assignment.

During the remainder of his stay in Coatesville and during his time in Silver Spring, he continued to visit his family in Baltimore and contribute to their support. On these visits he stayed overnight but never occupied the same bedroom with his wife and had no sexual relations with her subsequent to September 19, 1941. She had also refused to go to live with him at Silver Spring.

From Silver Spring he was transferred to Fort George Meade, Maryland, in August 1943 and thereafter his work took him from one place to another until he eventually came to live in Philadelphia. His visits to Baltimore to see his children became less frequent but he continued to contribute to the support of his wife and son.

The testimony of the wife and her witnesses is diametrically opposed to that of the husband, as she contends that she was always ready and willing to live with her husband but that he indicated an unwillingness for her to accompany him; that the separation was a consentual one brought about by the husband's employment; that in fact, their common habitation continued to be the Ramona Avenue home in Baltimore; and that she and her husband continued to have sexual relations until as late as January, 1957.

The master's report contains a careful analysis of the testimony and an excellent discussion of the appli-

cation of the law. The exceptions filed by the wife were heard before MILNER, P. J. and WATERS, J., the latter, who wrote the opinion for the court, accepted the judgment of the master as to credibility, saying, "In this and other pertinent respects the master, who had the advantage of hearing and observing the witnesses, accepted the plaintiff's version and rejected that of the defendant. Our review leads us to agree with the master, a member of the bar who has had extensive trial experience and one in whom we repose especial confidence." This Court also accepts his judgment. *Rosen v. Rosen,* 183 Pa. Superior Ct. 103, 128 A. 2d 111 (1956).

A careful reading of this record supports the conclusion of the master that, "In the present case plaintiff exercised his undoubted right, for business reasons, to move to Coatesville, Pennsylvania, in June of 1941, and it was the duty of the defendant to abide by his decision. This, the defendant, without cause or consent, failed to do and thereby deserted the plaintiff in 1941. The record discloses no reason or justification for her action. She placed no weight on her marital obligations. Plaintiff is, without a doubt, the injured and innocent spouse. A clear case of desertion was made out." See Freedman, Law of Marriage and Divorce in Pennsylvania, Vol. I, Par. 244, page 603.

Although the separation began in June of 1941, when the husband was transferred to Coatesville, Pennsylvania, the husband does not contend that the statute began to run until September 19, 1941. The original separation may have been consentual but ripened into desertion when on September 19, 1941, she made it clear that under no circumstances would she join him. The burden then shifted to the wife to prove that the separation continued to be consentual or that she had a reasonable cause for withdrawal. *White v. White,* 185 Pa. Superior Ct. 141, 138 A. 2d 162 (1958). The fact

of the appellant's voluntary contributions to the support of his wife and son after the separation is not conclusive evidence that the separation was with his consent, but may be explained as was done in this case. *Halley v. Halley,* 113 Pa. Superior Ct. 206, 172 A. 403 (1934). There is nothing in the testimony to support a contention that her reason for her failure to live with her husband was a cause that would entitle her to a divorce. *Totino v. Totino,* 176 Pa. Superior Ct. 108, 106 A. 2d 881 (1954).

The facts in this case are quite similar to those in *MacDonnell v. MacDonnell,* 190 Pa. Superior Ct. 397, 154 A. 2d 267 (1959), where the husband was a professional soldier whose assignments to duty fixed the place where he could establish the family home. The only question in that case was whether the original separation, which was admittedly by mutual consent, ripened into a wilful and malicious desertion when his wife refused to return to him after numerous bona fide offers by the husband. We held that it did, and in that case, at page 400, we said, "The usual rule that the husband's choice of a home, according to his means, is controlling and the wife must abide by his decision and live with him, Sacks v. Sacks, 172 Pa. Superior Ct. 543, 94 A. 2d 147 (1953), applies with greater force to our present situation because the husband here had little choice as to the location of the home because of his profession and the wife had full knowledge of the necessities of the situation."

Here, too, the husband had little choice as to the location of his home because of the nature of his employment and the wife was appraised of the situation. The refusal of the wife to join her husband on September 19, 1941, persisted in for the statutory period, was without legal justification and amounted to wilful and malicious desertion.

Decree affirmed.